Thomas **STRECK**, Darlene Adonizio, Gerald Kronk, Peter H. Kells, Ronald Moyer, Constance Moyer, Joseph Castagna, Kimberly Castagna, and Karen Kronk

v.

**LOWER MACUNGIE TOWNSHIP BOARD OF COMMISSIONERS and David M. Jaindl, Individually, and Jaindl Realty, L.P.**

Appeal of: Lower Macungie Township Board of Commissioners.

Thomas Streck and Darlene Adonizio, h/w, Gerald Kronk and Karen Kronk, h/w, Peter H. Kells, Ronald Moyer and Constance Moyer, h/w, Joseph Castagna and Kimberly Castagna, h/w

v.

Lower Macungie Township Board of Commissioners and David M. Jaindl, Individually and Jaindl Realty, L.P.

Appeal of: David M. Jaindl and Jaindl Realty, L.P.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 15, 2012.

Decided Dec. 14, 2012.

---

Joseph A. Zator II, Allentown, for appellants David M. Jaindl and Jaindl Realty, L.P.

Donald W. Miles, Bethlehem, Thomas C. Anewalt, Reading, and Robert N. Rust III, Allentown, for appellees.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The Township of Lower Macungie and David M. Jaindl and Jaindl Realty, L.P. (collectively, Jaindl) appeal an order of the Court of Common Pleas of Lehigh County (trial court) that invalidated the 2010 amendments to the Zoning Ordinance of Lower Macungie Township.[1] The trial court did so because it found that the 2010 amendments had not been enacted in accordance with the public notice requirements for a zoning ordinance. Concluding that the trial court erred, we reverse.

At issue is a 700–acre parcel located in the Township, most of which is owned by Jaindl. In September and October of 2009, Jaindl filed a series of applications with the Township to construct a quarry on his land, permitted under the Zoning Ordinance as a conditional use. To avoid the litigation expected by such a development, the Township and Jaindl entered into a memorandum of understanding. By this "understanding," Jaindl agreed to withdraw his applications to construct a quarry, and the Township agreed to amend its Zoning Ordinance to allow certain commercial and industrial uses, other than quarrying, in the area where Jaindl's land is located. The memorandum of un-

derstanding listed the amendments to be made to the Township's Zoning Ordinance and Subdivision and Land Development Ordinance (SALDO) as well as a timeline for their enactment.

Thereafter, amendments to the Zoning Ordinance were finalized and set forth in a proposed Ordinance No. 2010–06. Notice of the ordinance proposal was given in area newspapers on June 9 and 16, 2010. The newspaper notices included the title of the ordinance and a summary of the substance of the proposed amendments; the location where the complete text of Ordinance No. 2010–06 could be found; the dates, times, and locations of public hearings on the amendments; and a statement that the ordinance could be enacted at the Board of Supervisors' meeting of July 1, 2010. In addition, the Township sent individual notices to property owners whose land would be affected by the new zoning districts; these individual notices contained the same information offered in the newspaper notices. Finally, the Township placed signs around the perimeter of the 700 acres of land to be rezoned that repeated the same information found in the newspaper and individual notices.

The public meeting on Ordinance No. 2010–06 was conducted as advertised, and on July 1, 2010, the Township enacted Ordinance No. 2010–06. This ordinance transformed the 700 acres of land at issue from principally agricultural to a variety of commercial and industrial uses; it also enacted certain dimensional and parking requirements appropriate for those new uses.[2] However, the scope of Ordinance

1. LOWER MACUNGIE TOWNSHIP ZONING ORDINANCE OF 1998 (ZONING ORDINANCE).

2. Under the Zoning Ordinance of 1998, agriculture, animal husbandry, farm operations, forestry, kennels, nurseries and greenhouses,

and wildlife sanctuaries were permitted in the Agricultural/Rural District. ZONING ORDINANCE, art. 4, § 401. Conditional uses included quarrying, bed and breakfasts, government uses, heliports, private use airports

No. 2010–06 went far beyond creating new zoning districts. It amended certain definitions in the Zoning Ordinance, including, *inter alia*, "fast food restaurant" and "warehouse," and those Zoning Ordinance provisions relating to signs and mall security services. It also repealed the Zoning Ordinance provision that required traffic studies in some instances.[3] On July 2, 2010, Ordinance No. 2010–06 became effective.[4]

Thereafter, the Township published notices on July 7, 2010, and July 14, 2010, to inform the public that Ordinance No. 2010–06 had been enacted. These post-enactment notices stated that the deadline for challenging the new ordinance on procedural grounds was 30 days from the date of the second publication, *i.e.*, July 14, 2010.

On August 13, 2010, Thomas Streck, who owns property adjacent to the 700 acres of rezoned land, and several other landowners, who own land within the rezoned area and had received individual notices (collectively, Objectors), challenged the validity of Ordinance No. 2010–06 on procedural grounds. They also filed an appeal with the Zoning Hearing Board to challenge Ordinance No. 2010–06 on substantive grounds, claiming that the new ordinance was invalid because it had been enacted pursuant to an illegal zoning contract.

Jaindl intervened in Objectors' land use appeal before the trial court. Joined by the Township, Jaindl moved to quash Objectors' appeal as time-barred because it had not been filed within 30 days of the July 2, 2010, effective date of Ordinance No. 2010–06, *i.e.*, August 2, 2010. The trial court denied the motion to quash. It held that Objectors' appeal was timely because the Township's post-enactment notices had invited challenges to be filed within 30 days of the second notice of July 14, 2010. Objectors filed their appeal on August 13, 2010, within the deadline presented in the second notice, which was

or airstrips, public and private schools, riding stables, sand and gravel operations. ZONING ORDINANCE, art. 4, § 402. In 2009, the Agricultural/Rural District was changed to an Agricultural Protection District. Ordinance No. 2010–06 created two new zoning districts, Highway Industrial—Spring Creek and Commercial—Spring Creek, and two new overlay districts, Urban Residential Overlay and Agricultural Protection Overlay. The Commercial—Spring Creek District permits commercial development such as banks, car washes, clubs, lodges and social buildings, community centers, cultural facilities, day care centers, government facilities, group care facilities, shopping centers, retail stores, restaurants, professional services and business offices. The Highway Industrial—Spring Creek District provides for commercial and industrial uses such as auto sales, auto repairs, bottling and packaging, fast food service, construction contracting, hospital, light metal processing, manufacturing, offices, personal services, planned industrial, office or research park, professional offices, publishing, research laboratories, restaurants, retail stores, self-storage, and warehouse, wholesale, storage or distribution uses. The Agricultural Protection Overlay permits infrastructure and improvements within the Agricultural Protection District. The Urban Residential Overlay permits adult residential communities within the Urban Residential district. These new districts and overlays applied to large portions of Jaindl's nearly 700 acres in Lower Macungie Township.

3. Ordinance No. 2010–06 also contained housekeeping provisions such as a severability provision and a clause repealing any ordinance provisions conflicting with Ordinance No. 2010–06.

4. Simultaneously, the Township enacted Ordinance No. 2010–07, which amended the Township's SALDO and became effective on July 2, 2010. Objectors do not challenge Ordinance No. 2010–07, which is 53 pages long, on procedural grounds, or any grounds.

timely under the Township's own notice.[5]

Thereafter, the parties addressed the merits of Objectors' claim that the Township had failed to follow the procedures for the enactment of Ordinance No. 2010–06 set forth in Section 610 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. The trial court held in favor of Objectors.

The trial court found that the Township's newspaper notices published in advance of the public meeting on Ordinance No. 2010–06 were deficient because the summary of the ordinance contents did not provide "reasonable detail," as is mandated by Section 610(a) of the MPC, 53 P.S. § 10610(a). Otherwise, the trial court found no deficiencies in the procedure by which Ordinance No. 2010–06 was enacted. The trial court did not address Objectors' other argument, namely that Ordinance No. 2010–06 should be nullified because it owed its genesis to an illegal zoning contract.

The Township and Jaindl appealed the trial court's order of January 31, 2011, which denied the motion to quash, and the order of August 31, 2011, which nullified Ordinance No. 2010–06.[6] In this appeal,[7] Jaindl presents two questions for our review. First, Jaindl contends that Objectors' appeal was time barred under the Judicial Code because it was not filed within 30 days of July 2, 2010, the effective date of Ordinance No. 2010–06; that date was not changed by the Township's post-enactment notices. Second, Jaindl contends that the trial court erred because

the record shows that the pre-enactment notices of Ordinance No. 2010–06 fully complied with the requirements of Section 610(a) of the MPC, 53 P.S. § 10610(a).

We begin with a review of the statutes relevant to a challenge to an ordinance on procedural grounds. It is a task not unlike the assembly of a Chinese puzzle.

Section 5571.1 of the Judicial Code authorizes a challenge to the validity of an ordinance on grounds that the process of its enactment was defective. Section 5571.1 states, in relevant part, as follows:

(a) Applicability; court of common pleas.—

(1) This section shall apply to any appeal raising questions relating to an alleged defect in the process of or procedure for enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision.

(2) An appeal pursuant to this section shall be to the court of common pleas.

(b) Appeals of defects in statutory procedure.—

(1) *Any appeal raising questions relating to an alleged defect in statutory procedure shall be brought within 30 days of the intended effective date of the ordinance.*

(2) Except as provided in subsection (c), it is the express intent of the General Assembly that this 30–day limitation shall apply regardless of

---

5. The trial court did not address Objectors' alternate claim that the Township's post-enactment notice, stating a deadline of 30 days from July 14, 2010, allowed its appeal *nunc pro tunc, i.e.,* as of August 2, 2010.

6. The Township did not file a brief or participate in the appeal to this Court.

7. This Court reviews the trial court's findings and conclusions to determine whether the trial court committed an error of law or abused its discretion. *Messina v. East Penn Township,* 995 A.2d 517, 525 (Pa.Cmwlth. 2010).

the ultimate validity of the challenged ordinance.

(c) Exemption from limitation.—An appeal shall be exempt from the time limitation in subsection (b) if the party bringing the appeal establishes that, because of the particular nature of the alleged defect in statutory procedure, the application of the time limitation under subsection (b) would result in an impermissible deprivation of constitutional rights.

42 Pa.C.S. § 5571.1(a)-(c) (emphasis added). Relevant here is the requirement that a procedural challenge must be brought within 30 days of the ordinance's effective date, unless that deadline "would result in an impermissible deprivation of constitutional rights." 42 Pa.C.S. § 5571.1(c).

Section 5571.1 then establishes the burden of proof that must be satisfied by the party lodging a procedural challenge. Where the appeal is filed within 30 days of the ordinance's effective date, the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with statutory procedure.

42 Pa.C.S. § 5571.1(e)(1).[8] Where the appeal is filed outside the 30–day deadline, the party must prove a right to an exemption from the deadline. This is done by evidence demonstrating that the municipality's "failure to substantially comply" with the applicable procedures prevented the public from commenting on the ordinance. 42 Pa.C.S. § 5571.1(e)(2)(ii). Once the appellant demonstrates the right to an exemption, he must then prove that the ordinance did not "strictly comply" with the procedures applicable to its enactment. 42 Pa.C.S. § 5571.1(e)(2)(i).[9] Finally, Section 5571.1(d)(1) provides that ordinances will be presumed to have been adopted "in strict compliance with statutory procedure," thereby placing the burden on the challenger to prove otherwise. 42 Pa.C.S. § 5571.1(d)(1).[10]

**8.** Section 5571.1(e) states as follows:

(e) Burden of proof.—Notwithstanding any other provision of law, an ordinance shall not be found void from inception except as follows:
(1) In the case of an appeal brought within the 30–day time limitation of subsection (b), *the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with statutory procedure.*
(2) *In the case of an appeal which is exempt* from the 30–day time limitation in accordance with subsection (c), *the party alleging the defect must meet the burden of proving each of the following:*
(i) *That there was a failure to strictly comply* with statutory procedure.
(ii) *That there was a failure* to substantially comply with statutory procedure which *resulted in insufficient notification* to the public of impending changes in or the existence of the ordinance, *so that the public would be prevented from commenting on those changes and intervening, if*

*necessary,* or from having knowledge of the existence of the ordinance.
(iii) That there exist facts sufficient to rebut any presumption that may exist pursuant to subsection (d)(2) that would, unless rebutted, result in a determination that the ordinance is not void from inception.
42 Pa.C.S. § 5571.1(e) (emphasis added).

**9.** Proving the right to an exemption on grounds that the process used did not substantially comply with applicable procedures makes the task of proving lack of strict compliance a simple matter.

**10.** Section 5571.1(d) states in full as follows:
(d) Presumptions.—Notwithstanding any other provision of law, appeals pursuant to this section shall be subject to and in accordance with the following:
(1) An ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure.
(2) In all cases in which an appeal filed in court more than two years after the

The MPC also addresses procedural challenges to, specifically, land use ordinances. At the same time the General Assembly enacted the above-recited rules set forth in Section 5571.1 of the Judicial Code, it also enacted Section 1002–A(b) of the MPC to provide that a procedural challenge to a land use ordinance be presented to a court of common pleas and not to a zoning hearing board. Section 1002–A(b) states as follows:

> Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption shall be raised by appeal taken directly to the court of common pleas of the judicial district in which the municipality adopting the ordinance is located in accordance with 42 Pa.C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.).

53 P.S. § 11002–A(b).[11] Section 1002–A(b) reinforced the point that procedural challenges to land use ordinances are governed by Section 5571.1 of the Judicial Code.

These 2008 enactments set forth in Section 5571 of the Judicial Code and in Section 1002–A(b) of the MPC responded to decisions of our Supreme Court that held that procedural defects in the enactment of an ordinance may be so grave that they render the ordinance void *ab initio*. *See Hawk v. Eldred Township Board of Supervisors*, 983 A.2d 216 (Pa.Cmwlth. 2009) (setting forth a chronology of the case law rendering ordinances void *ab initio* and the responses of the General Assembly). The Judicial Code and the MPC established procedures for challenging an ordinance on procedural, not substantive, grounds.

Another part to the legislative changes made in 2008 was the addition of Section 108 of the MPC. It provides a method by which a municipality or an individual can reduce the likelihood that a land use ordinance or a land use permit will be held void *ab initio* on procedural grounds. A person who has obtained a permit to use his land for a controversial use, say quarrying, can "reaffirm" the procedural regularity of his permit by publishing notices of the permit in accordance with Section 108. Likewise, the procedural regularity of an ordinance enactment can be reaffirmed.

Section 108 of the MPC is entitled "Optional notice of ordinance or decision; procedural validity challenges." It provides, in relevant part, as follows:

> (a) It is the intent of this section to allow optional public notice of municipal action *in order to provide an opportunity to challenge*, in accordance with section 1002–A(b) or section 1002.1–A, the validity of *an ordinance* or decision *on the basis that a defect in procedure resulted in a deprivation of constitutional rights*, and to establish a period of limitations for raising such challenges.
>
> \*　　\*　　\*
>
> (c) Each notice shall contain the following:

intended effective date of the ordinance is allowed to proceed in accordance with subsection (c), the political subdivision involved and residents and landowners within the political subdivision shall be presumed to have substantially relied upon the validity and effectiveness of the ordinance.

(3) An ordinance shall not be found void from inception unless the party alleging the defect in statutory procedure meets the burden of proving the elements set forth in subsection (e).
42 Pa.C.S. § 5571.1(d).

11. Section 1002–A of the MPC was added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 11002–A.

(1) If the notice relates to an ordinance:

 (i) The municipality's ordinance number.

 (ii) A brief statement of the general content of the ordinance.

 (iii) The address of the municipal building where the full text of the ordinance may be reviewed by members of the public.

\* \* \*

(3) In addition to the requirements of paragraphs (1) and (2), the publication of each notice authorized by the section *shall contain a statement that the publication is intended to provide notification of an ordinance or decision and that any person claiming a right to challenge the validity of the ordinance or decision must bring a legal action within 30 days of the publication of the second notice.*

\* \* \*

(d) *Notwithstanding this or any other act, in order to provide certainty of the validity of an ordinance or decision, any appeal or action contesting the validity of an ordinance* based on a procedural defect in the process of enactment or the validity of a decision based on a procedural or substantive defect *shall be dismissed, with prejudice, as untimely if not filed within the 30th day following the second publication* of the notice authorized in this section.

(e) Any appeal or action filed within the 30–day period referred to in subsection (d) shall be taken to the court of common pleas and shall be conducted in accordance with and subject to the procedures set forth in 42 Pa. C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.) in the case of challenges to ordinances or section 1002.1–A in the case of challenges to decisions.

(f) *Where no appeal or action contesting the procedural validity of an ordinance or the procedural or substantive validity of a decision is filed* within the period set forth in subsection (d), *the ordinance or decision shall be deemed to be reaffirmed* and reissued on the date of the second publication of the optional notice permitted under this section.

(g) An appeal shall be exempt from the time limitation in subsection (d) only if the party bringing the appeal establishes that the application of the time limitation in subsection (d) would result in an unconstitutional deprivation of due process.

(h) *Nothing in this section shall be construed to abrogate, repeal, extend or otherwise modify the time for appeal as set forth in section 1002–A, where the appellant* was a party to proceedings prior to the entry of a decision or otherwise *had an adequate opportunity to bring a timely action in accordance with section 1002–A to contest the procedural validity of an ordinance* or the procedural or substantive validity of a decision.

53 P.S. § 10108 (emphasis added).[12]

Section 108(h) clarifies that the post-enactment optional notices do not "abrogate, repeal, *extend* or otherwise modify the time for appeal as set forth in section 1002–A [of the MPC]." 53 P.S. § 10108(h). Rather, Section 1002–A of the MPC governs. Accordingly, under Section 108(h), if one participated in a zoning board proceeding on a quarrying permit, for exam-

---

**12.** Section 108 of the MPC was added by the Act of July 4, 2008, P.L. 319, 53 P.S. § 10108.

ple, that person does not get an extension of the 30–day deadline for challenging the grant of the permit.[13] Likewise, if the putative challenger had "adequate" pre-enactment notice of an ordinance, he does not get an extension of the 30–day deadline set forth in Section 5571.1 of the Judicial Code. However, Section 108(g) of the MPC also provides an exemption from either 30–day deadline where its enforcement would cause the objector to suffer "an unconstitutional deprivation of due process." 53 P.S. § 10108(g).

■ To recap, the Judicial Code requires challenges to be brought within 30 days of the effective date of the ordinance. Further, if no challenge is brought within 30 days of the date of the municipality's second post-enactment Section 108 notice, the procedural validity of the ordinance is "reaffirmed." There is no deadline, however, where it would result in a deprivation of constitutional rights, and "[t]he only constitutional right that might be implicated . . . is a deprivation of due process due to a failure of notice and opportunity to be heard." *Hawk*, 983 A.2d at 224.[14]

Here, Jaindl contends that the Township's decision to issue the optional notices authorized by Section 108 of the MPC was of no moment. Section 108 of the MPC provides a municipality a way to reaffirm the procedural validity of an ordinance if no appeal is taken within 30 days of the second publication of the optional notice. 53 P.S. § 10108(f). However, Section 108(h) clarifies that it did not abrogate the rule in Section 5571.1 of the Judicial Code that an ordinance must be challenged within 30 days of its effective date. The only way Objectors could appeal later was by showing that the procedural irregularities were such that they were denied the opportunity to know about the proposed ordinance and were prevented "from commenting on those changes." 42 Pa.C.S. § 5571.1(e)(2)(ii). In this way, they would demonstrate their constitutional deprivation. Jaindl asserts that they cannot make that claim given the fact that some of the Objectors received individual notices from the Township of the proposed amendments and that the Township provided posted notices on the land to be rezoned, both of which exceeded the statutory notice requirements.[15]

---

13. Section 1002–A(a) states as follows:

*All appeals from all land use decisions* rendered pursuant to Article IX shall be taken to the court of common pleas of the judicial district wherein the land is located and *shall be filed within 30 days after entry of the decision* as provided in 42 Pa.C.S. § 5572 (relating to time of entry of order) or, in the case of a deemed decision, within 30 days after the date upon which notice of said deemed decision is given as set forth in section 908(9) of this act. *It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30–day limitation in this section should be applied in all appeals from decisions.*

53 P.S. § 11002–A(a) (emphasis added).

14. However, if an appeal is filed more than two years after the intended effective date, the

challenger must also rebut the presumption that the public has relied on the ordinance. 42 Pa.C.S. § 5571.1(e)(2)(i-iii). This last requirement is not at issue because Objectors' appeal was filed less than two years after the intended effective date.

15. Jaindl observes that the extra notices provided by the Township make it difficult for the Objectors, some of whom received individual notices, to contend that the notice was so inadequate that they were deprived of an ability to comment on the ordinance proposal. Objectors respond that the posted notices were inadequate because there were too few of them, and they were spaced too far apart. Further, they were not placed on property adjacent to the land to be rezoned, so as to inform adjacent landowners, who did not receive individual notices.

The efficacy of these additional notices could be relevant to the question of Objectors'

Objectors rejoin that given the "nefarious and precipitous manner in which the zoning change was accomplished," they were prevented from commenting on Ordinance No. 2010–06. Objectors' Brief at 17. Accordingly, they were not required to file their procedural challenge within 30 days of the effective date of Ordinance No. 2010–06; within 30 days of the second publication of the optional notice issued by the Township; or by any deadline.

■ We agree with Jaindl that Section 108 of the MPC did not abrogate the 30–day rule in Section 5571.1 of the Judicial Code for challenging an ordinance. The optional notices published by the Township under Section 108 were done for another purpose: to "reaffirm" the procedural validity of Ordinance No. 2010–06. The trial court erred in holding that the Section 108 optional notices abrogated the deadline in section 1002–A of the MPC, which, in turn, incorporates the 30–day deadline in Section 5571.1 of the Judicial Code. The Township's post-enactment Section 108 notice did not automatically give Objectors a new deadline for lodging a procedural challenge to Ordinance No. 2010–06. Rather, the Objectors had to prove their right to an exemption from the deadline in Section 1002–A of the MPC in order to appeal later than August 2, 2010.

■ Objectors argue, alternatively, that by undertaking the Section 108 notices *during* the 30–day appeal period set by Section 5571.1 of the Judicial Code, the Township created confusion entitling them to a *nunc pro tunc* appeal. We agree. Objectors may have been able, and planning, to appeal under the 30–day deadline in accordance with Section 1002–A of the MPC and Section 5571.1 of the Judicial

Code, when the Township suddenly announced a new deadline, *i.e.,* 30 days from July 14, 2010, the date of the second post-enactment notice. A *nunc pro tunc* appeal is appropriate where there has been a breakdown in the administrative process. *Carson Helicopters, Inc. v. Unemployment Compensation Board of Review,* 960 A.2d 524, 527 (Pa.Cmwlth.2008). We conclude that here such a breakdown occurred. First, the Section 108 notices did *not* explain that the deadline of Section 5571.1 of the Judicial Code remained in effect. Second, because the Section 108 notices were issued within the 30–day period after enactment of Ordinance No. 2010–06, they may be construed as waiving the 30–day deadline in Section 5571.1. For these reasons, we hold that Objectors' appeal was timely under principles of *nunc pro tunc.*

We turn, then, to the trial court's holding that the Township's notices distributed in advance of the enactment of Ordinance No. 2010–06 were procedurally defective and not in strict compliance with Section 610 of the MPC. In doing so, the trial court found that the summary of the ordinance did not provide the "reasonable detail" required by Section 610 of the MPC.

Section 610 of the MPC requires advance notice to the public of an ordinance enactment and specifies the dates, time and place for such notice. Section 610(a) states:

> Proposed zoning ordinances and amendments shall not be enacted unless notice of proposed enactment is given in the manner set forth in this section, and shall include the *time and place of the meeting at which passage will be considered,* a reference to a *place* within the

constitutional and *nunc pro tunc* claims. However, we decide the *nunc pro tunc* issue on other grounds. Specifically, we hold that the Section 108 notices created confusion be-

cause they were issued within the 30–day deadline under Section 5571.1 of the Judicial Code and did not explain that they were *not* extending the Section 5571.1 deadline.

municipality where copies of the proposed ordinance or amendment may be examined without charge or obtained for a charge not greater than the cost thereof. The governing body shall *publish* the proposed ordinance or amendment once *in one newspaper of general circulation in the municipality not more than 60 days nor less than 7 days prior to passage.*

53 P.S. § 10610(a) (emphasis added). Objectors do not contend, and the trial court did not find, that any of these steps were omitted. Stated otherwise, the Township strictly complied with each of these procedural requirements. *Cf. Hawk,* 983 A.2d at 220 (noting that measures taken by the township to publicize its ordinance and to invite public input did not strictly comply because, *inter alia,* it made the text of the ordinance available on the internet but not at a specific "place within the municipality," such as the library).

Section 610(a) goes on to specify what information about the proposed ordinance must be contained in the notice. It states:

Publication of the proposed ordinance or amendment shall include either the full text thereof or *the title and a brief summary,* prepared by the municipal solicitor and *setting forth all the provisions in reasonable detail.* If the full text is not included:

(1) *A copy thereof shall be supplied to a newspaper* of general circulation in the municipality at the time the public notice is published.

(2) An *attested copy of the proposed ordinance shall be filed in the county law library or other county office* designated by the county commissioners, who may impose a fee no greater than that necessary to cover the actual costs of storing said ordinances.

(b) In the event substantial amendments are made in the proposed ordinance or amendment, before voting upon enactment, the governing body shall, at least ten days prior to enactment, readvertise, in one newspaper of general circulation in the municipality, a brief summary setting forth all the provisions in reasonable detail together with a summary of the amendments.

53 P.S. § 10610(a), (b) (emphasis added).

Here, the Township did not publish the full text of Ordinance No. 2010–06, which is 30 pages long, in the newspapers. It chose to do a summary of the proposed ordinance. In full, the Township's pre-enactment notice stated as follows:

*Notice is hereby given that the Lower Macungie Township Board of Commissioners will consider for possible adoption an Ordinance amending the Township Zoning Ordinance entitled Zoning Ordinance/Map Amendment. This proposed amendment, of which this Notice is a summary proposes the following:* establish four new zoning districts: Highway Industrial—Spring Creek (HI–SC), Commercial—Spring Creek (C–SC), Agricultural Protection Overlay (APO), and Urban Residential Overlay (UO); *provide within these new zoning districts uses* permitted by right, uses permitted by condition, uses permitted by special exception, and accessory uses; *provide for regulations within these new zoning districts* covering lot area, lot width, building coverage and height, minimum yard requirements, and off-street parking, along with other additional standards; *amend the official Zoning Map,* including the rezoning of lands to these new zoning districts and/or the Urban Residential District; *add a definition* of a "fast food restaurant;" amend the definition

of "warehouse and whole trade" to become the new definition of "warehouse, wholesale, storage or distribution use;" *revise requirements regarding signs; provide for conditions for warehouse,* wholesale, storage or distribution use; *amend the requirement that applicants provide security* services to shopping centers; *repeal requirements regarding traffic impact studies; repeal any conflicting ordinances,* resolutions or parts thereof; provide for severability of parts of this ordinance deemed to be invalid; and provide for an effective date. The Board of Commissioners will consider the foregoing Ordinance at a hearing to be held during the [Board's] public meeting on July 1, 2010 at 7:00 p.m. at the Lower Macungie Township Municipal Building, 3400 Brookside Road, Macungie, Pennsylvania. Copies of the full text of this Ordinance are available to any interested party for inspection and/or copying at the Township Municipal Building, or for inspection during normal business hours at the offices of this newspaper and the Lehigh County Department of Law. All interested parties are invited to attend this hearing.

Reproduced Record at 356a (R.R. ——) (emphasis added).[16] The trial court held

that the summary part of this notice lacked "reasonable detail."

Specifically, the trial court observed that the notice did not state that it was the Zoning Ordinance *of 1998* that was being amended; did not identify the particular "conflicting ordinance" provisions being repealed by section number; stated that there would be "four new zoning districts" instead of "four new *classes* of zoning districts;" did not identify the location of the new zoning districts; did not include the table of contents of Ordinance No. 2010–06; did not summarize the purpose of the new zoning districts; and did not identify the uses to be excluded from the new classes of zoning districts. None of these omitted items is specifically required by Section 610(a) of the MPC.

■ The strict compliance standard is usually applied to the objective standards in Section 610(a), such as date, time and place of a notice. *See, e.g., Hawk,* 983 A.2d at 220. This is a case of first impression in that the trial court invoked the strict compliance standard when determining whether an ordinance summary has "reasonable detail."[17] Indeed, as far as can be determined, there has never been a case where an ordinance has been invalidated on procedural grounds because the

---

**16.** The notice provided special instructions for persons with mobility, hearing or eyesight challenges. It stated:

The Lower Macungie Township Municipal Building is accessible to the physically handicapped. Any person that requires special assistance to understand the nature of the business conducted at the above hearing because of visual, hearing, or other impairment is requested to contact Bruce Fosselman, Township Manager, at least five (5) days prior to the scheduled hearing to arrange for the necessary assistance.

R.R. 356a.

**17.** The trial court relied upon *Valianatos v. Zoning Hearing Board of Richmond Town-*

*ship,* 766 A.2d 903 (Pa.Cmwlth.2001), and *Lower Gwynedd Township v. Gwynedd Properties, Inc.,* 527 Pa. 324, 591 A.2d 285 (1991). They are inapposite. Neither dealt with the question of whether the published summary was reasonably detailed. *Lower Gwynedd* involved a failure to satisfy the objective notice requirement because the full text of the ordinance was not available at a designated county office. *Id.* at 326, 591 A.2d at 286. *Valianatos,* 766 A.2d at 906, is distinguishable because there the notice to the public did not advise that the ordinance might be adopted at the public hearing. Here, the notice stated that the proposed ordinance could be adopted at the meeting of July 1, 2010.

*summary* of the ordinance contents was not "reasonably detailed."

Jaindl contends that the deficiencies in the summary identified by the trial court are not substantive, but minor. He argues that "reasonable detail" means just that: disclosing enough information to make the public aware of the ordinance proposal and where to obtain an attested copy of the full text of the ordinance. We agree.

All that Section 610 requires is a *brief* summary in reasonable detail. 53 P.S. § 10610(a). The trial court's objections are more semantic than substantive in nature, and they border on the picayune. The truth is that excessive detail can overwhelm the reader and thereby mislead, not inform, the reader. For example, the trial court faulted the summary of Ordinance No. 2010–06 because it refers to the "Township Zoning Ordinance" and not the "Township Zoning Ordinance *of 1998.*" Unless the reader was an expert in the Township's ordinances, adding the year "1998" would provide a meaningless, not reasonable, detail. For the same reason, it was not necessary for the Township to identify the section numbers of the ordinances being repealed or amended. It is more important to identify the content of the sections being repealed or amended, and the summary did so. Using the table of contents of Ordinance No. 2010–06 would have been another way to do a summary, but its absence is not unreasonable. The table of contents simply repeats, but in a different form, the information in the Township's summary. It may have been a good idea for the summary to explain the purpose of the proposed amendments, but this is a requirement that does not appear in Section 610(a) of the MPC and is a matter of policy for the General Assembly to decide. Had the Township gone the alternate route of publishing the entire text of Ordinance No. 2010–06, it would not have had to explain its purpose for this legislative change.

We conclude that the Township's summary listed the salient details of Ordinance No. 2010–06 in "reasonable" detail. The summary gave the reader notice that there would be a major rezoning of land located within the Township, and it advised any citizen interested in more information on where to obtain a free copy of the new zoning map and the complete text of Ordinance 2010–06, *i.e.*, the Township Municipal Building. The "reasonable detail" standard does not give a reviewing court a license to flyspeck an ordinance summary. To so hold would require municipalities to publish the entire text of an ordinance, which is a result Section 610(a) sought to avoid with the summary option. This is especially true here in light of the fact that Ordinance No. 2010–06 was 30 pages in length. *See Messina v. East Penn Township*, 995 A.2d 517, 538 (Pa.Cmwlth.2010) (affirming the trial court's decision that a notice with all 91 pages of the proposed ordinance would be "ridiculous" and the summary was sufficient, especially because the reader was instructed on where to find the full text).

Objectors contend that this Court should, in any case, affirm the trial court on alternative grounds. They argue that Ordinance No. 2010–06 is invalid because it resulted from an illegal zoning contract. They define "contract zoning" as

> the attempt by a municipality and a landowner to circumvent by a private (usually secretly-negotiated) contract the statutory public process of land use planning embodied by the Municipalities Planning Code. . . .

Objectors' Brief at 35. Objectors contend that the only permissible form of contract zoning is one done under a settlement overseen and approved by a court of law. By contrast, the memorandum of under-

standing between Jaindl and the Township was reached in non-public negotiations and bound the Township to enact amendments to the Zoning Ordinance in a matter of weeks. The memorandum of understanding was not the result of a court approved settlement of any threatened or actual litigation. Further, Jaindl's conditional use hearing scheduled on his limestone quarry application was not "litigation." Although illegal zoning contracts are unenforceable, Objectors argue that such a remedy would not be appropriate here because they were harmed by the 2010 zoning amendments, not the contract.

 Jaindl rejoins that Objectors' contract zoning argument is a substantive challenge to Ordinance No. 2010–06, and this case involves only a procedural challenge. In any case, Objectors lost this substantive challenge before the Zoning Hearing Board, and they did not appeal. Jaindl asserts that, in any case, had the ordinance violated contract zoning, the sole remedy available to Objectors is the nullification of the contract, not the ordinance. Jaindl further argues that Ordinance No. 2010–06 does not implicate contract zoning because some of the 2010 amendments apply to property owners not affected by the memorandum of understanding; the definition changes, for example, affected everyone in the Township. Jaindl argues that the motives for enacting an ordinance are immaterial because property owners constantly seek zoning changes, which is their right as citizens.

 Contract zoning, sometimes called "contractually conditioned zoning," is "rezoning of [a particular] subject land in exchange for covenanted use restrictions applicable to that land." *Carlino v. Whitpain Investors,* 499 Pa. 498, 505, 453 A.2d 1385, 1388 (1982). Contract zoning is a problem when it imposes an informal zoning regulation *contained only in a con-tract instead of an ordinance* and applies to a limited group instead of the general public. *Id.* at 504, 453 A.2d at 1388. In *Carlino,* our Supreme Court rejected contract zoning as an improper surrender of a municipality's police power to private interest. The Supreme Court stated that "[c]ontracts ... have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulation." *Id.* at 504, 453 A.2d at 1388. The remedy is to render the contract unenforceable. A court may not rescind a properly enacted zoning ordinance that applies to the general public. To void an ordinance on substantive grounds, the challenger must show that the ordinance is arbitrary or unreasonably discriminatory or without substantial relation to the public health, safety, morals or general welfare. *Gladwyne Colony, Inc. v. Township of Lower Merion,* 409 Pa. 441, 446–47, 187 A.2d 549, 552 (1963). Further, the court will not inquire into the motives of a municipal legislative body in making zoning changes. *Id.* at 447, 187 A.2d at 552.

 In sum, even were this Court to find the memorandum of understanding to constitute contract zoning, the remedy would be to deprive the parties of the ability to enforce the memorandum. The fact that a rezoning is initiated by residents in the zoned area is not determinative of the substantive merits of the ordinance. Further, "an ordinance [cannot] be invalidated simply because a zoning board accepts the views advanced in support of the ordinance...." *Robert Louis Corporation v. Board of Adjustment of Radnor Township,* 1 Pa.Cmwlth. 292, 274 A.2d 551, 555 (1971). In sum, Objectors' contract zoning challenge to Ordinance No. 2010–6 lacks merit.

For the above-stated reasons, we reverse the trial court.

Senior Judge COLINS concurs in the result only.

### ORDER

AND NOW, this 14th day of December, 2012, the order of the Court of Common Pleas of Lehigh County dated August 31, 2011 in the above captioned matter is hereby REVERSED.