# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Generation, LLC                 :
Anthracite Ridge, LLC,                    :
                    Appellants            :   No.  822 C.D. 2021
                                          :
          v.                              :   Argued:  September 12, 2022
                                          :
Schuylkill County Board of                :
Commissioners, Schuylkill County          :
Airport Authority                         :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                        FILED: October 26, 2022


Clean Air Generation, LLC and Anthracite Ridge, LLC (Landowners) appeal from the June 23, 2021 order of the Schuylkill County Court of Common Pleas (trial court), denying Landowners' procedural validity challenge seeking to void a curative amendment enacted by the Schuylkill County Board of Commissioners (Board of Commissioners).  Upon review, we affirm.

## Factual Background

The background facts pertinent to this matter are not in dispute. Landowners proposed to develop a wind energy project in four municipalities located in Schuylkill County (County), specifically Porter, Tremont, Frailey and Hegins Townships.  (Stipulation (Stip.) ¶2; Reproduced Record (R.R.) at 56a.)

The County proposed to adopt a curative amendment to the Schuylkill County Zoning Ordinance (Zoning Ordinance), which addressed wind energy projects, as well as three other subjects not relevant to this proceeding (Curative Amendment). *Id*. ¶3, R.R. at 56a. The legally required advertisements scheduling a public hearing regarding the County's intention to adopt a curative amendment to the Zoning Ordinance were published by the Board of Commissioners on February 4, 2020, and February 11, 2020. *Id*. ¶4; R.R. at 57a. Pursuant to the notices, a "public hearing" was scheduled for Tuesday, February 18, 2020, at 9:00 a.m.[1] *Id*. ¶5; R.R. at 57a. The notices also indicated that the Board of Commissioners intended to consider "adoption of the [C]urative [A]mendment" at its regularly scheduled meeting on Wednesday, February 19, 2020, at 10:00 a.m. *Id*. ¶11; R.R. at 58a.

At the time of the public hearing on February 18, 2020, there were three County Commissioners: then-Chairman George Halcovage, Jr., Frank Staudenmeier and Gary Hess. On that date, First Assistant County Solicitor Glenn Roth (County

---

[1] Section 609.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by Section 2 of the Act of October 5, 1978, P.L. 1067, pertaining to municipal curative amendments, provides that "[w]ithin 180 days from the date of the declaration and proposal, the municipality shall enact a curative amendment to validate, or reaffirm the validity of, its zoning ordinance **pursuant to the provisions required by section 609** [53 P.S. §10609] in order to cure the declared invalidity of the zoning ordinance." 53 P.S. §10609.2 (emphasis added). Section 609(b)(1) of the MPC, which is the provision referenced in section 609.2, requires the governing body to hold a public hearing, pursuant to public notice, before voting on the enactment. 53 P.S. §10609(b)(1). That section provides, in this regard as follows:

> Before voting on the enactment of an amendment, the governing body **shall hold a public hearing thereon, pursuant to public notice**, and pursuant to mailed notice and electronic notice to an owner of a tract or parcel of land located within a municipality. . . .

53 P.S. §10609(b)(1) (emphasis added).

Solicitor) opened the floor for submission of oral comments and written evidence.[2] *Id.*
¶6; R.R. at 57a. The County Solicitor announced that the public hearing was being recorded and anyone in attendance would be allowed to speak and submit comments in writing. (R.R. at 70a.) Landowners were present with counsel and made a presentation. *Id.* ¶8; R.R. at 57a. During his presentation, Landowners' counsel asked if the Board of Commissioners would be present. (R.R. at 71a.) Other than asking this question, Landowners' counsel did not object to the hearing going forward without a quorum of the Board of Commissioners. *Id.* Commissioner Halcovage arrived at some point after the hearing began. (Stip. ¶¶6-7; R.R. at 57a.) At the conclusion of public comments, the County Solicitor, on behalf of the County, announced that the public hearing would be recessed and reconvened the next day, Wednesday, February 19, 2020, prior to the Board of Commissioners' regularly scheduled 10:00 a.m. public meeting. (Stip. ¶7; R.R. at 57a.) The County Solicitor also noted for the record that "Commissioner Halcovage is here today and again, your comments have been

---

[2] Roth presided over the public hearing as an agent of the governing body, *i.e.*, the County's Board of Commissioners. Schuylkill County is a Fourth Class County. The County Code applies. The county commissioners are required to appoint a county solicitor. 16 P.S. § 901. Section 904 of the County Code, governing duties of Assistant County Solicitors states: "Each assistant and special counsel shall perform such duties in connection with the legal affairs of the county as may be assigned by the county commissioners or the county solicitor." 16 P.S. § 904.

On February 18, 2019, Roth opened the public hearing. He introduced the County's Consultant, who explained the Curative Amendment. Roth then invited the public to comment and submit written evidence. After the public had the chance to comment and submit evidence, Roth continued the hearing until the next day. Roth made sure the comments were recorded, and submissions were provided to the Commissioners. (R.R. at 77a-78a.)

Roth's role as presiding officer at the public hearing was in connection with the legal affairs of the county. There is nothing in the record to establish that he did not preside over the hearing as the authorized designee or agent of the Board of Commissioners. *See Jane Doe v. Schuylkill County Courthouse*, (M.D. Pa., Civil No. 3:21-CV-477, filed 5/10/22) 2022 WL 1491611, slip op at *9 ("we have little difficulty concluding that by virtue of his role as a First Assistant County Solicitor, Roth was an agent of the county").

recorded, your submissions will be submitted to the Board of Commissioners." (R.R. at 78a.)

On February 19, 2020, the Board of Commissioners resumed the public hearing at which a quorum was present. *Id.* ¶10; R.R. at 57a. After all public comment and evidence was submitted, Commissioner Halcovage made a motion to enter all public statements and written evidence into the public hearing record and to conclude the public hearing. The motion was seconded by Commissioner Hess and approved unanimously. (R.R. at 81a.) After the public hearing was closed, the Board of Commissioners resumed its duly advertised meeting and voted unanimously to adopt Ordinance 2020-01, *i.e.*, the Curative Amendment.[3] *Id.* ¶11; R.R. at 58a.

On March 20, 2020, Landowners filed a procedural validity challenge to the Curative Amendment pursuant to section 609(b)(1) of the MPC.[4] (R.R. at 13a-16a.) Based on a stipulation of the parties, the Schuylkill County Airport Authority was permitted to intervene as a party. *See* R.R. at 104a.

The legal issue before the trial court was whether the Board of Commissioners conducted a public hearing that satisfied the requirements of section 609(b)(1) of the MPC, as part of the process of enacting the Curative Amendment.

---

[3] Charlie Schmehl, the County's consultant, testified during the hearing that the Department of the Army and the National Guard had expressed concerns to the County about the wind turbines, particularly with respect to difficulties of night vision operations, night helicopter landing sites and training activities operating out of Fort Indiantown Gap Military Reservation. The Curative Amendment, *inter alia*, addressed this issue, by limiting wind turbines to special exceptions with standards relating to maximum height. The Curative Amendment also addressed the Appalachian Trail Act, Act of April 28, 1978, P.L. 87, *as amended*, 64 P.S. §§801-805, by requiring larger setbacks along the Appalachian Trail. (R.R. at 70a.)

[4] Section 5571.1 of the Judicial Code provides courts of common pleas with jurisdiction to hear an appeal relating to an alleged defect in a statutory procedure relating to the "enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision." 42 Pa.C.S. §5571.1.

Again, this section of the MPC requires a public hearing prior to the adoption of a curative amendment.

The trial court decided the matter on a stipulation of facts and written briefs and issued the June 23, 2021 order denying and dismissing Landowners' procedural validity challenge. Landowners filed a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.) on August 6, 2021. The trial court issued an opinion, pursuant to Pa.R.A.P. 1925(a) on September 21, 2021, concluding that a quorum of the Board of Commissioners was not required at the February 18, 2020 public hearing and that Landowners had waived the issue by not raising it on February 18, 2020, or February 19, 2020. This appeal followed.

### **Appeal Issues**

On appeal,[5] Landowners raise the following two issues:

1. Whether the trial court erred in denying Landowners' procedural validity challenge, when it held that the MPC and County Code[6] did not require a quorum of members to hold a hearing on the proposed curative amendment?

2. Whether the trial court erred in determining that Landowners waived the objection to the lack of a quorum?

---

[5] The Commonwealth Court reviews the trial court's findings and conclusions to determine whether it abused its discretion or committed an error of law. *Streck v. Lower Macungie Township Board of Commissioners*, 58 A.3d 865, 870 n.7 (Pa. Cmwlth. 2012). When reviewing a timely challenge alleging a procedural defect in the adoption of an ordinance, Pennsylvania law provides that the ordinance is presumed to be valid and the party alleging the defect bears the burden of proving otherwise. 42 Pa.C.S. §5571.1(d) and (e).

[6] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§101-3000.3903.

## Analysis

In their first issue, Landowners argue that the actual presence of a quorum of the Board of Commissioners was necessary to conduct the February 18, 2020 public hearing. Landowners contend that the plain language of section 504(a) of the County Code[7] requires a quorum of the Board of Commissioners to "transact business," and that such business includes conducting the public hearings referenced in section 609(b)(1) of the MPC. They assert that because a quorum was not present on February 18, 2020, no valid public hearing took place. They assert that, consequently, because the Board of Commissioners failed to conduct a public hearing in accordance with the MPC, the Curative Amendment is void *ab initio*. For the reasons that follow, we find that a valid public hearing took place on February 18, 2020, even though only one Commissioner was present.

First, there is no statutory requirement in the MPC that a quorum of a board of commissioners must be present to conduct a valid public hearing while performing its legislative function under section 609(b)(1) of the MPC.[8] And,

---

[7] Section 504(a) of the County Code provides:

> The commissioners shall constitute a board, two members of which shall be a quorum **for the transaction of business**, and, when convened after notice, shall be competent to perform all the duties appertaining to the office of the county commissioners.

16 P.S. §504(a) (emphasis added).

[8] *Accord Barr v. Pine Township Board of Supervisors*, 341 A.2d 581, 583 (Pa. Cmwlth. 1975) (because Police Tenure Act, Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§811-816, does not contain a section defining whether a quorum, majority or totality of the appointing authority is necessary in order to properly conduct hearings, there was no violation of the administrative process where only two of three board members presided). Compare section 906 of the MPC pertaining to adjudicative "hearings" conducted by quasi-judicial **zoning hearing boards**, which requires a quorum:

> The [zoning hearing] board shall elect from its own membership its officers, who shall serve annual terms as such and may succeed

**(Footnote continued on next page…)**

6

Landowners have cited no case law or statute requiring the actual presence of a quorum of a board of commissioners in order for a public hearing to be considered a valid public hearing.

A "public hearing" is defined in the MPC as "a formal meeting held pursuant to public notice by the governing body or planning agency, **intended to inform and obtain public comment**, prior to taking action in accordance with this act." Section 107 of the MPC, 53 P.S. §10107 (emphasis added). Thus, the purpose of the public hearing requirement under section 609(b)(1) is to provide a forum whereby concerned citizens can attend and air divergent views and assist the governing body in deciding whether to adopt a curative amendment.

Here, the February 18, 2020 meeting was held so that the public could learn about the proposed Curative Amendment and be given an opportunity to speak. The meeting was recorded; the public attended, made comments, and was provided the opportunity to file written statements. No official action was taken, no votes were taken, and no decisions were made. Rather, the February 18, 2020 meeting was conducted so that the Board of Commissioners could listen to citizen concerns about, and support for, the Curative Amendment. After the meeting, the Board of Commissioners, presumably after review of the comments, reviewed and discussed the proposal.

---

themselves**. For the conduct of any hearing** and the taking of any action, **a quorum shall be not less than a majority of all the members of the board**, but the board may appoint a hearing officer from its own membership to conduct any hearing on its behalf and the parties may waive further action by the board as provided in section 908.

53 P.S. §10906 (emphasis added).

Landowners argue that section 504(a) of the County Code requires a quorum of a board of commissioners for the "transaction of business" and that the holding of a public hearing constitutes the "transaction of business."[9]

The County Code does not define what is meant by "transaction of business." However, unlike Landowners, we do not equate the holding of the public hearing on February 18, 2020, to the "transaction of business" by the Board of Commissioners. The Sunshine Act[10] lends support to our conclusion. Section 504(a) of the County Code, which must be read *in pari materia* with the Sunshine Act, requires "[o]fficial action and deliberations by a quorum of the members of an agency" to "take place at a meeting open to the public." 65 Pa.C.S. §704. "Official action" is defined as:

(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. C.S. §703. "Agency business" is defined as "[t]he framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including

---

[9] County commissioners are the responsible managers and administrators of the fiscal affairs of their respective counties. Section 1701 of the County Code, 16 P.S. §1701. Section 509(a) of the County Code provides that "[t]he commissioners may adopt resolutions and ordinances prescribing the manner in which powers of the county shall be carried out and generally regulating the affairs of the county." 16 P.S. §509(a).

[10] 65 Pa.C.S. §§701-716.

8

administrative action." 65 Pa. C.S. §703.  These actions all involve deliberations, making decisions and the exercise of judgment.  The purpose of the February 18, 2020 meeting was not to deliberate or make any decisions but, rather, to receive information and public comment.

Because the MPC does not require a quorum, majority or totality of a board of commissioners in order to properly conduct the public hearings mandated by section 609(b)(1), the trial court did not err in denying and dismissing Landowners' procedural validity challenge on the grounds that only one of three Commissioners attended the public hearing on February 18, 2020.  Accordingly, the trial court is affirmed.[11]

_____
PATRICIA A. McCULLOUGH, Judge

---

[11] Given our decision, we need not address the waiver issue.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Generation, LLC :
Anthracite Ridge, LLC, :
    Appellants : No. 822 C.D. 2021
      :
   v.    :
      :
Schuylkill County Board of :
Commissioners, Schuylkill County :
Airport Authority :

## *ORDER*

AND NOW, this 26th day of October, 2022, the June 23, 2021 order of the Schuylkill County Court of Common Pleas is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge