## Gladwyne Colony, Inc., Appellant, *v.* Lower Merion Township.

Argued November 26, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Desmond J. McTighe,* with him *John H. Archer, Philip D. Weiss,* and *Duffy, McTighe & McElhone,* for appellants.

*Edmund B. Spaeth, Jr.,* with him *John E. Forsythe,* Township Solicitor, and *Wright, Spencer, Manning & Sagendorph,* for township, appellee.

*Robert L. Trescher,* with him *Arthur H. Moss, Cassin W. Craig,* and *Montgomery, McCracken, Walker & Rhoads,* and *Wisler, Pearlstine, Talone & Gerber,* for appellees.

Opinion by Mr. Justice Musmanno, January 8, 1963:

The Home Life Insurance Company of America and Albert W. and Louise M. Tegler, are owners of a tract of land in Lower Merion Township, Montgomery County. Since the interests of the Teglers are identical with those of the Insurance Company, we will, for the sake of convenience, refer to the owners of the property involved in this lawsuit as the Insurance Company.

On June 24, 1959, the Board of Commissioners of Lower Merion Township rezoned 96 acres of the Insurance land from R-1 Residential and 40 acres from R-1 Residential to R-7 Apartment.

On July 8, 1959, the insurance company agreed to convey to the township 82.4 acres of its land for the purposes of a park. The township, in return, agreed to install at township expense a sewer main around that part of the insurance company land upon which it was to build an apartment-house building and to connect the sewer main with the existing township sanitary sewer. The township agreed also to construct an access road from a certain Hollow Road into the apartment area. The insurance company agreed to grant to the township rights of way for any portions of the main and access road crossing its land and if and when requested by the township to do so to convey, without additional consideration, a site of reasonable size for a sewage pumping station.

On the same date as the agreement just mentioned, the insurance company deeded to the township 82.4 acres of land for use as a park. At the time of recording, the township certified that the consideration for the property was $60,000. The deed was recorded July 27, 1959, one day after the rezoning ordinance already mentioned became effective.

On August 15, 1961, seven property owners in the neighborhood of the apartment and park development

area filed a suit in equity in the Court of Common Pleas of Montgomery County against the township and the insurance company asking that the agreement, deed and rezoning ordinance described be invalidated and declared null and void. The plaintiffs averred, inter alia, that the ordinance was invalid because it amounted to conditional legislation, that it constituted a discrimination against the plaintiffs and that it was not based on any police power purposes of zoning legislation as contemplated by the First Class Township Code. (Act of June 24, 1931, P. L. 1206.) The plaintiffs alleged further that the township had no right or power to install at the expense of the township the sewer main or the access road mentioned. The plaintiffs asked the court to enjoin the township from the contemplated action and to compel the township to reconvey the controverted land to the company.

The defendants filed preliminary objections in the nature of a demurrer and motions to dismiss and for more specific pleadings. After amended complaint filed by the plaintiffs, the court dismissed the complaint.

On appeal, the plaintiffs contend that the July 8, 1959 agreement is invalid in that it obligated the township to expend an undetermined amount of public funds, a procedure prohibited by the First Class Township Code. In *Allegheny Co. v. Pa. P.U.C.*, 192 Pa. Superior Ct. 100, the Superior Court disposed of this type of protest in the following language: "Moreover, the amounts which the county became obligated to pay, though not absolutely fixed in dollars, were nevertheless limited by the nature and extent of the physical facilities which were ultimately to be replaced."

In this connection the plaintiffs also argue that the First Class Township Code requires that a contract for purchases over $1,000 be advertised and the price set forth in writing, requiring bidding and notice to

taxpayers, with public hearing. They admit, however, that the bidding provisions would not be applicable to a case where the township desires to acquire one specific property. This was the case here—the township acquired the particular land involved for specific park purposes. Nothing in the First Class Township Code requires notice and hearings as contended for in the situation thus presented.

It is true that under the First Class Township Code (Act of June 24, 1931, supra) the township has the power of eminent domain and may exercise such power for the establishing of parks, playgrounds and other recreation places. The township, however, is not limited to that mode of acquisition, since the code also provides that the township may acquire private property by purchase "or otherwise" for park purposes[1] and may acquire real estate by purchase, by gift "or otherwise".[2] Furthermore, townships are authorized to make contracts for lawful purposes and to effectuate the provisions of the Code.[3]

The plaintiffs next contend that the agreement constituted an illegal delegation of legislative power in that the present commissioners bound future commissioners to a project they might not think wise. The court below aptly disposed of this argument as follows: "This point is based on the argument that the commissioners bound their successors to enact certain legislation whether or not their successors considered it wise or proper. Of course, this is not true. *The township entered into a contract that will require work to be done in the future, as is true of most contracts, and requires no further legislation to implement or carry out the contract.* If contracts such as this can-

---

[1] §1501 (11), 53 P.S. §56501.

[2] §3001, 53 P.S. §58001.

[3] §1801, 53 P.S. §56801.

not be made then the township will find it impossible to carry on the gigantic business of running a major municipality in orderly and businesslike fashion." (Emphasis supplied)

It might be added that if the argument of the plaintiffs in this connection were valid, no township could carry on any business which extended beyond the term of the current commissioners. Nor does the fact that the township has agreed to pay for the cost of the sewerage installation from general funds and has agreed not to assess the only property owner to be benefited thereby (the insurance company), render the agreement invalid. In *Nether Providence Township Sewer District Assessment Case,* 148 Pa. Superior Ct. 7, the Court held that a contract with property owners, releasing them from liability for assessments for benefits in consideration of the granting of a right of way, was valid and within the powers of the township. The Court there pointed out that the township code clearly reveals that it was not the intention of the lawmakers to preclude a township from making a contract with a property owner covering the subject of damages and benefits arising out of the construction of a sewer system.

The plaintiffs also argue that the agreement between the township and insurance company was a log-rolling one based on a reciprocally improper quid pro quo. They say in effect that the township promised to rezone the land in question so as to allow the company to construct apartment buildings, in recompense for which the insurance company promised to convey land for park purposes. Thus, the plaintiffs maintain, the ordinance was illegal in that it was passed for one particular property owner. But this argument is a shotgun argument. The plaintiffs attempt to upset a zoning ordinance as being improper without alleging specifically wherein the ordinance is arbitrary or unrea-

sonably discriminatory or without substantial relation to the public health, safety, morals or general welfare. The plaintiffs are, in the main questioning the motives of the municipal legislative body in making the zoning changes, which a judicial tribunal cannot inquire into in the absence of an abuse of discretion. As stated in *Gratton v. Conte,* 364 Pa. 578, at 584: "Of course a zoning ordinance must not be arbitrary or unreasonably discriminatory, but zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals or general welfare: Ward's Appeal, 289 Pa. 458, 137 A. 630; Kerr's Appeal, 294 Pa. 246, 144 A. 81."

The complaint and amendments thereto fail to reveal any wrong done to the public or any act performed by the township which was not within its power to perform.

We differ with the lower court's views in one respect. There is no merit in the defendants' contention that the plaintiffs could not test the validity of the ordinance in this equity action. The remedy at law would not have been an adequate one here, since the plaintiffs were attacking not only the propriety of the ordinance but the agreement and the actions taken under it as well. The ordinance was being questioned as part of the entire transaction. (*Wood v. Goldvarg,* 365 Pa. 92.) And we stated in *Duquesne Light Co. v. Upper St. Clair,* 377 Pa. 323: "But the exhaustion doctrine will not be applied nor will a party be relegated to a legal remedy if the legal remedy is not adequate and complete or if its pursuit would work irreparable harm; in such case equity has jurisdiction and will afford relief."

Decree affirmed; each party to bear own costs.