293 A.2d 909.

RONALD NICHOLSON *et al.* *vs.* EDWARD TOURTELLOTTE *et al.*

JULY 24, 1972.

, PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This civil action was commenced in the Superior Court in November of 1971 by the owners, and the prospective buyers and developers of a tract of land located on Post Road and Dunn's Corner in the town of Westerly and containing 30 acres, more or less. Named as the defendants in their official capacities are the town building and zoning inspectors, and the members of the zoning board and of the town council. The plaintiffs allege that they have complied with all the prerequisites for the issuance of the permits which will authorize the construction of multi-family dwellings on the property, and they ask that the defendants be compelled to issue those permits. In the Su-

perior Court the defendants' motion for an involuntary dismissal was granted, and the plaintiffs appealed from that judgment.

There is no controversy about the facts giving rise to this litigation. The case has its beginnings in the 1962 amendment of the town's zoning ordinance.[1] That amendment divided the town into several zones or districts including an R-1 residential zone where a multi-family dwelling was not an authorized use, and an R-3 residential zone where that use was permitted. The subject tract was located in an R-1 zone.

In 1968 Dorothy M. and Walter H. Krebs, Jr., the then owners of the parcel in question, and two of the plaintiffs, petitioned the town council to rezone Krebs' land from R-1 to R-3 residential and thereby permit the construction of multi-family dwellings thereon. The petition was considered by the council at its May 3, 1968 meeting, as was a proposed contract between the owners and optionees on the one side and the town council on the other. That contract stipulated that the town would agree to rezone the Krebs' land from R-1 to R-3 residential, if the owners and the prospective buyers would agree not to subdivide the premises "* * * except as such subdivision shall conform to the R-1 zoning regulations * * *." The town council acted favorably on both matters, granting the petition to rezone and directing its president to execute the proposed agreement on behalf of the town. Thereafter, the contract was executed and a resolution rezoning the property was enacted.

In February of 1970 the town's zoning ordinance was again amended, and a multi-family dwelling, a permitted use in an R-3 residential district under the 1962 amend-

---

[1]The authorization for zoning in the town of Westerly comes from special enabling legislation (P. L. 1922, ch. 2299 as amended), rather than from the general enabling legislation, G. L. 1956 (1970 Reenactment) ch. 24 of title 45.

ment, became a conditionally permitted use in that district and available only if authorized by the zoning board as a special exception.

About a year later, in January 1971, certain developers, also plaintiffs herein, agreed to purchase the Krebs' land for $240,000. The purchase and sale agreement was specifically made subject to the condition that the land "* * * is now properly zoned to permit the construction of a minimum of 225 apartment units, and that said property will continue to be so zoned through the date of closing [by January 5, 1972]."

The developers thereupon interested a group of potential investors in the proposed development, engaged architects and engineers, applied for and received a commitment from the Federal Housing Administration for long-term financing and made other plans for the construction of 216 apartment units on the land which they had agreed to purchase. When those preliminaries were completed they applied for the appropriate zoning and building permits, and when they were not forthcoming this litigation was instituted.

The parties have briefed and argued the case as if the principal legal issues were the legality of the May 1968 rezoning and the validity of the May 1968 agreement wherein the town and the ownership group, each in consideration of the other's undertaking, respectively agreed to rezone the subject property from R-1 to R-3, and to subject that property to a special restriction not common to the other parcels in R-3 residential zones.

The issues are novel in this state, and the authorities elsewhere are not in accord. On the negative side is Rathkopf who says that most courts reject the rezoning as illegal and the bargain as invalid and ultra vires if the *quid pro quo* for the enactment of the rezoning legislation was the imposition of restrictions upon the rezoned land differing from those imposed elsewhere in the same district. Under-

lying those decisions, he says, is the notion that a contract embodying such terms "* * * is prima facie evidence of 'spot zoning' in its most maleficent aspect, is not in accordance with a comprehensive plan and is beyond the power of the municipality." 3 Rathkopf, *Zoning and Planning* 74-9 (3d ed. 1972). *Accord, Hartnett* v. *Austin,* 93 So.2d 86 (Fla. 1956); *Baylis* v. *Baltimore,* 219 Md. 164, 148 A.2d 429 (1959); *Houston Petroleum Co.* v. *Automotive Products Credit Ass'n,* 9 N. J. 122, 87 A.2d 319 (1952). *See State ex rel. Zupancic* v. *Schimenz,* 46 Wis.2d 22, 31-32, 174 N.W.2d 533, 538-39 (1970); 5 McQuillin, *Municipal Corporations* §15.41 (rev. 3d ed. 1969); 2 Yokley, *Zoning Law & Practice* §19-11 at 439-41 (3d ed. 1965).

The cases espousing a contrary view, although in the minority, are perhaps more recent. Generally, they attempt to accommodate traditional zoning concepts to the "[e]xplosive urban growth and rapid social and economic development [which] have taxed inflexible land-use-change mechanisms to their limit." Shapiro, *The Case for Conditional Zoning,* 41 Temple L.Q. 267, 287 (1968).

The State of New York follows the minority rule, and in *Church* v. *Islip,* 8 N.Y.2d 254, 168 N.E.2d 680, 203 N.Y.S.2d 866 (1960) the court of appeals, while recognizing that "[a]ll legislation 'by contract' is invalid in the sense that a Legislature cannot bargain away or sell its powers," nonetheless announced that it would deal "with actualities, not phrases." *Id.* at 259, 168 N.E.2d at 683, 203 N.Y.S.2d at 869. Then, viewing the contract in that light, it decided that the agreed-upon rezoning was not arbitrary, preferential or discriminatory, that since the landowners had agreed to the restrictive conditions there was no one in a position to contest them and that the contract was therefore valid and enforceable.

In accord is the State of Washington. There the court, while acknowledging that "[t]here are jurisdictions which

hold that all zoning ordinances which are amended, with concomitant agreements, are invalid" nonetheless held the better rule to be that,

> "* * * before deciding to amend a zoning ordinance, the city must weigh the benefits which will flow to the public generally against the detriment, if any, to the adjacent property owners or to the public which may result therefrom. An amendment to a zoning ordinance and a concomitant agreement should be declared invalid only if it can be shown that there was no valid reason for a change and that they are clearly arbitrary and unreasonable, and have no substantial relation to the public health, safety, morals, and general welfare, or if the city is using the concomitant agreement for bargaining and sale to the highest bidder or solely for the benefit of private speculators." State ex rel. Myhre v. Spokane, 70 Wash.2d 207 at 216, 422 P.2d 790 at 796 (1967).

See Sylvania Electric Products, Inc. v. Newton, 344 Mass. 428, 183 N.E.2d 118 (1962); Bucholz v. Omaha, 174 Neb. 862, 120 N.W.2d 270 (1963).

While we have referred, albeit briefly and generally,[2] to the divergent views with respect to the law of contract rezoning, we cannot agree with the parties that the record in this case requires us to choose which of the two views shall prevail in this state. This is so because the May 1968 agreement plaintiffs seek to enforce fails to establish any of the rights they claim.

At the outset we note that nothing in the agreement expressly prohibits the town from at any time rescinding, amending or altering its 1968 rezoning of the subject property. Without such a provision that agreement was, at

---

[2]Some authorities have urged that it is vital to draw distinctions among the numerous types of contracts that have been executed in connection with rezoning. See, e.g., Schaffer, Contract Zoning and Conditional Zoning, 11 Prac. Law. 43 (May 1965); Shapiro, The Case for Conditional Zoning, 41 Temple L. Q. 267 (1968), and the cases cited therein.

best, of doubtful and transitory value to plaintiffs since, in its absence, the zoning legislation bargained for was susceptible to repeal or alteration at any time.

The plaintiffs, recognizing the obvious deficiency, seek a way out of their predicament by arguing that the urban redevelopment which is so necessary to the survival of our cities will suffer unless developers are protected against land use changes pending construction. In effect, they argue that public policy demands that the May 1968 contract should be amended by implication and that it should be read as if the town had expressly agreed that it would allow the rezoning legislation to remain in effect for whatever period of time might reasonably be required to permit the construction of the proposed development project.

Other developers, either fortuitously or by reason of foresight, have, at least in this respect, fared better than plaintiffs, for the rezoning contracts they executed contained provisions like those plaintiffs now suggest we supply. Thus, for example, the agreement to rezone provided in *Midtown Properties, Inc.* v. *Madison,* 68 N. J. Super. 197, 172 A.2d 40 (Law Div. 1961) *aff'd per curiam* 78 N. J. Super. 471, 189 A.2d 226 (App. Div. 1963) that the amendment to the zoning ordinance which legalized the proposed development would not be altered or amended for seven years; in *Voight* v. *Saunders,* 206 Okla. 318, 243 P.2d 654 (1952) and *Stiriz* v. *Stout,* 210 N.Y.S.2d 325 (Sup. Ct. 1960) that the rezoned property would either automatically or by appropriate action revert to its former zoning classification if construction were not commenced by the landowners within a specified period; and in *Bucholz* v. *Omaha, supra,* that the rezoning was subject to the commencement of construction within five years.

While we might be willing in this case to add by implication to the May 1968 agreement the kind of promise others have expressly stipulated in their rezoning agreements,

such an addition, without more, would be of no assistance to these plaintiffs.

What they need, if they are to prevail, is for us to rewrite the contract so that the town will agree to exempt the subject land from any subsequent zoning legislation changing a multi-family dwelling from a permissible to a conditionally permissible use in any and all R-3 residential zones in the town. But nothing either in the record before us or in plaintiffs' arguments suggests that the addition of such a provision is "indispensable to effectuate the intention of the parties," 4 Williston *Contracts* §610B at 533 (3d ed. 1961); *accord, Adkins* v. *Adams*, 152 F.2d 489, 492 (7th Cir. 1945); *Marini* v. *Ireland*, 56 N. J. 130, 143, 265 A.2d 526, 533 (1970), or that it was omitted by reason of sheer inadvertance or because it was so obvious as to need no expression. And without that kind of showing we are unwarranted in imposing a contractual obligation upon the town by implication. *Refinery Employees' Union* v. *Continental Oil Co.*, 160 F.Supp. 723, 731 (W.D. La. 1958); *Lippman* v. *Sears, Roebuck & Co.*, 44 Cal.2d 136, 280 P.2d 775 (1955); *Bromer* v. *Florida Power & Light Co.*, 45 So.2d 658 (Fla. 1950); *Palisades Properties, Inc.* v. *Brunetti*, 44 N. J. 117, 130, 207 A.2d 522, 531 (1965).

This is not to say that in an appropriate case we might not read into a contract a provision which, although not expressed within the four corners of the document, was nonetheless obviously contemplated by the parties when they made their bargain and is necessary to carry their intentions into effect. In that situation, and subject to the parol evidence strictures described in *Golden Gate Corp.* v. *Barrington College,* 98 R. I. 35, 199 A.2d 586 (1964), it is sometimes permissible to remedy an inadvertent and clearly apparent omission by reading into an otherwise integrated written contract what must have been intended if the writing is to reflect the entire agreement of the par-

ties. *Myron* v. *Union R.R.*, 19 R. I. 125, 32 A. 165 (1895). But that is impermissible in this case.

The conclusion we reach makes it unnecessary for us to consider plaintiffs' further contentions that the February 1970 amendment to the Westerly zoning ordinance impaired the obligations of their contract in violation of art. I, sec. 10 of the Federal Constitution, or that the town should be estopped from contesting the validity of what under our decision is a nonexistent provision of the May 1968 agreement.

The plaintiffs' appeal is denied and dismissed and the judgment appealed from is affirmed.

Motion to reargue denied.

ROBERTS, C.J., did not participate.

*Roberts & Willey, Inc., Dennis J. Roberts, II,* and *Edward Manning* as amicus curiae, for U. S. Investment and Development Corporation, plaintiffs.

*Urso and Adamo, Natale Urso,* for defendants.