453 A.2d 1385

Peter CARLINO and Elizabeth Carlino, His Wife, Appellants,

v.

WHITPAIN INVESTORS, Whitpain Township, Whitpain Township Board of Supervisors and Pennsylvania Department of Transportation, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1982.

Decided Dec. 23, 1982.

Edward J. Hughes, Norristown, for appellants.

Howard Gershman, Blue Bell, for Whitpain Tp. and Bd. of Sup'rs.

J. Peirce Anderson, Norristown, John M. Hrubovcak, Asst. Atty. Gen. for Dept. of Transp.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This equity action was commenced in the Court of Common Pleas of Montgomery County by the appellants, Peter Carlino and Elizabeth Carlino, seeking a preliminary injunction against the appellees, Whitpain Investors (hereinafter Developer), Whitpain Township (hereinafter Township), and Pennsylvania Department of Transportation (hereinafter PennDOT). Upon motion of PennDOT, the action was transferred to Commonwealth Court, and, sustaining appellees' preliminary objections, Commonwealth Court dismissed the complaint.[1] The instant appeal ensued.

Since review is sought of the sustainment of preliminary objections in the nature of demurrers, the well pleaded factual allegations set forth in the complaint are to be regarded as true for purposes of review. *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970). The facts as alleged by appellants' complaint establish the following. Developer is

[1]. *Carlino v. Whitpain Investors,* 52 Pa.Commw.Ct. 145, 415 A.2d 461 (1980).

constructing an apartment complex in the Township on a 47 acre tract of land situated between three roads, one of which, Stenton Avenue, is a state highway. Appellants' residence lies directly across Stenton Avenue from the construction site. Developer's predecessor in title sought to have the 47 acre tract rezoned from an R–1 (single-family) classification to an R–3 (multi-family) classification to permit construction of residential rental units. At the hearing on rezoning of the tract, the then owner stipulated that a 300 foot buffer would be provided from the right-of-way line of Stenton Avenue, and further specified that no access road from the apartment complex to Stenton Avenue would be built. In 1973, the requested zoning change was adopted by the Township. In 1979, however, construction of an access road from the apartment complex to Stenton Avenue commenced, and appellants became aware that the land development plan finally approved by the Township had, at the insistence of the Township, included a provision for access to Stenton Avenue, and that in 1978, a driveway permit authorizing construction of the access road to Stenton Avenue had been issued by PennDOT.

■■■ Alleging that the driveway permit issued by Penn-DOT to Developer was granted without adequate preliminary studies, and asserting the existence of deficiencies in the access road that endanger the public health, safety, and welfare, appellants seek an injunction requiring revocation of the permit. Established principles governing standing to raise issues in the public interest, however, bar appellants' assertion of these claims. In *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280–281 (1975), our cases dealing with standing were summarized as follows:

> The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be

"aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

(footnotes omitted). This rule respecting standing is not intended to bar from relief persons injured by breach of a public duty merely because many others have incurred similar injuries as a consequence of that breach; rather, the "concern is to distinguish those who have suffered some *individual injury* from those asserting only the common right of the entire public that the law be obeyed." *Id.*, 464 Pa. at 203, 346 A.2d at 287 (emphasis added). Since the instant complaint, although containing a broad assertion that deficiencies in the access road will "have a unique impact" on appellants, fails to specify any *individual injury* attributable to deficiencies in the roadway itself and in preparatory studies, appellants must be regarded as lacking standing to raise such objections to PennDOT's action.

█ Appellants further challenge PennDOT's grant of the driveway permit on grounds that presence of the access road immediately adjacent to their property will cause inconvenience and annoyance, thereby impairing the value of their property in a manner not compensable in damages. We regard this assertion as inadequate to state a cause of action. In *Wolf v. Department of Highways,* 422 Pa. 34, 220 A.2d 868 (1966), an eminent domain case, an owner of business property abutting a state highway alleged that highway improvements had diminished the property's value by necessitating a circuitous route of ingress, thereby reducing the number of business customers willing to enter the premises. Denying the owner's claim for damages insofar as property value diminution occasioned by such a diversion of traffic, this Court held that owners of properties abutting state roads have no cognizable legal interest in preserving a particular flow of traffic on those roads. Thus, in *Wolf,* 422 Pa. at 47, 220 A.2d at 875, quoting *State of Missouri ex rel. State Highway Comm. v. Meier,* 388 S.W.2d 855, 857 (Mo. 1965), the rights of an abutting owner were stated as follows:

"Respondent, as an abutting property owner on a public highway, does not now have and has never had any other property interest in the public highway other than a reasonable right of ingress and egress, as stated. Respondent has never had a property right in the traffic, great or *small,* on the highway, nor a right to recover damages for a decrease in value of her premises by reason of the diversion of traffic away from her property, *nor has she had a property right to have the same amount of traffic pass her property as before* or to have it move in the same direction."

(emphasis added). Since appellants' contention that the access road in question will cause inconvenience and annoyance is, in essence, an assertion of right to maintain the existing traffic conditions on Stenton Avenue, and since the existence of such a right has been negated by our holding in *Wolf,* appellants' claim against PennDOT fails to state a cause of action.

With respect to Township and Developer, appellants seek an injunction requiring the former to refrain from conditioning Developer's construction permit upon provision of the access road in question, and requiring the latter to eliminate that road and restore the 300 foot buffer zone along Stenton Avenue. The complaint alleges that Developer's predecessor in title, pursuant an agreement with the Township, stipulated as to plans to preserve the buffer area and forego an access road to Stenton Avenue, thereby rendering the 1973 rezoning contractually conditioned upon there being no access route traversing the buffer zone.

The concept of contractually conditioned zoning advanced by appellants lacks precedent in this Commonwealth,[2] and authorities elsewhere differ with respect to

2. In *Gladwyne Colony, Inc. v. Lower Merion Township,* 409 Pa. 441, 187 A.2d 549 (1963), it was alleged that a landowner gave consideration (parkland) to a municipality in exchange for enactment of a rezoning ordinance. The case did not involve contractually conditioned rezoning, however, since no special land use limitations or conditions were accepted by the property owner in order to secure the rezoning.

whether to accord the concept validity. See generally *Nicholson v. Tourtellotte,* 110 R.I. 411, 293 A.2d 909 (1972); *State ex rel. Zupancic v. Schimenz,* 46 Wis.2d 22, 174 N.W.2d 533 (1970); 70 ALR 3d 125. The proposition has long been recognized in this Commonwealth that individuals cannot, by contract, abridge police powers which protect the general welfare and public interest. As stated in *Leiper v. Baltimore & Philadelphia Railroad Co.,* 262 Pa. 328, 332, 105 A. 551, 553 (1918), "Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the 'general well-being of the State,' the rights of the individuals must give way to the general welfare." See also, *Municipal Authority of Blythe v. Pennsylvania Public Utility Commission,* 199 Pa.Super. 334, 185 A.2d 628 (1962). The police power of municipalities cannot be subjected to agreements which restrict or condition zoning district classifications as to particular properties. We are in accord with the position adopted by the Supreme Court of New Jersey, in *Houston Petroleum Co. v. Automotive Products Credit Association, Inc.,* 9 N.J. 122, 87 A.2d 319, 322 (1952), wherein the Court stated: "Contracts thus have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations." In *Houston,* covenants and restrictions agreed to by a landowner as a means of effecting a zoning change were held invalid on grounds that the purported contract thereby made, was, with regard to the municipality, ultra vires and contrary to public policy. In so holding, the Court relied upon its decision in *V.F. Zahodiakin Engineering Corp. v. Zoning Board of Adjustment,* 8 N.J. 386, 394–395, 86 A.2d 127, 131 (1952), setting forth the following principle, with which we agree, governing exercise of municipal zoning power:

> Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts. The use restriction must needs have general application. The

power may not be exerted to serve private interests merely, nor may the principle be subverted to that end. Accordingly, we reject the view that agreements, and concomitant representations or stipulations, which induce changes in zoning district classifications limit the effect of those changes once enacted. Thus, if it were proven, as alleged in the complaint, that Developer's predecessor in title procured rezoning of the subject land in exchange for covenanted use restrictions applicable to that land, such restrictions would be unenforceable; hence, proceedings to enforce the restrictions were properly dismissed by the court below.[3]

█ Finally, appellants contend that the court below abused its discretion by dismissing their complaint, while sustaining preliminary objections, without granting leave to amend the pleadings in an effort to avoid dismissal. As stated in *Otto v. American Mutual Insurance Co.,* 482 Pa. 202, 205, 393 A.2d 450, 451 (1978), "The right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully." Where allowance of an amendment would, however, be a futile exercise, the complaint may properly be dismissed without allowance for amendment. *Nationwide Mutual Insurance Co. v. Barbera,* 443 Pa. 93, 277 A.2d 821 (1971). Appellants submit only that, if granted the opportunity to amend their complaint, they "would plead . . . a sufficient interest to confer standing . . . and would assert third party beneficiary rights . . . arising out of the stipulation and agreement between the Township and the Developer and the conditional rezoning of the tract." Since the principle of contractually conditioned rezoning lacks viability, and in view of appellants' failure to allege what new interest would be asserted as a basis for standing, there appears no reasonable possibility that amendment could successfully be accom-

___

3. Since rezoning of the subject tract is held not to be validly conditioned upon there being no access road to Stenton Avenue, there is no need to address PennDOT's claim that municipalities lack authority to deny access to state highways.

plished. Accordingly, an opportunity to amend the complaint was properly denied.

Order affirmed.

LARSEN, J., files a dissenting opinion in which McDERMOTT, J., joins.

LARSEN, Justice dissenting.

I dissent to the majority's conclusion that the appellants have no enforceable rights against the township and developer. The Carlinos apparently were prepared to oppose the application for rezoning and, if necessary, challenge by appeal any approval of a new zoning classification. However, the appellants were misled to inaction by conduct of the township and the developer's predecessor when the property was rezoned. The potential flames of opposition were doused quickly and efficiently by the soothing nectar of promises, stipulations and representations publicly and officially made by township officials and the then owner of the premises. There is nothing before us to suggest that the Carlinos were other than completely assured that the threats to the public health and safety, which they perceived, were effectively minimized by the establishment of a 300 feet buffer zone and the committment that no access road to Stenton Avenue would be built. The appellants' good faith beliefs in this regard were derived directly from the pacifying actions of the township and the former property owner. The Carlinos, who were cajoled into giving up valuable and legally protected rights, should not be left without a remedy when they discover that they were deceived.

Under these circumstances, it may be said that the rezoning application with accompanying plan and representations were detrimentaly misleading as to the Carlinos. In such instances, our courts have said that negligent or wrongful official conduct which misleads an aggrieved party to his detriment can be equated to fraud. *See: Appeal of Girolamo,* 49 Pa.Commw. 159, 410 A.2d 940 (1980); *See also: Visual-Education Devices, Inc. v. Springettsbury Township,* 54 Pa.Commw. 529, 422 A.2d 235 (1980). Although the facts

and specific issues in *Girolamo* and *Springettsbury* are dissimilar to those in the present case, the judicial disapproval of deceit and misleading conduct as a viable principle is applicable to the Carlinos' situation.

Accordingly, I would hold that the appellants' right to be heard, a right which they were wrongfully induced to forego in 1973, should be recognized under the facts in this case and would, therefore, reverse.

McDERMOTT, J., joins in this dissenting opinion.