IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates, :
LLP and L&R Partnership, LLC, :
 :
   Petitioners : No. 1214 C.D. 2023
 :
  v. : Argued: June 4, 2024
 :
Pennsylvania Department of :
Transportation, :
   Respondent :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
   HONORABLE MATTHEW S. WOLF, Judge
   HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH    FILED: July 10, 2024

   Brandywine Village Associates, LLP (Brandywine) and L&R Partnership, LLC (L&R) (collectively "Brandywine" unless otherwise noted) petition for review of the October 6, 2023 Final Agency Order issued by the Pennsylvania Department of Transportation (DOT) denying Brandywine's objections to the Proposed Report of the Hearing Officer, which denied Brandywine's appeal of Highway Occupancy Permit #06102731 (Permit) issued to Carlino East Brandywine, L.P. (Carlino).[1] Brandywine contends that there were a number of procedural defects in the application review process and engineering deficiencies with the design plans. It asks this Court to revoke the Permit. Upon review, we affirm.

_____

[1] Carlino intervened in this appeal as of right pursuant to Pa. R.A.P. 1531.

## I. Facts and Procedural History

Carlino owns a 10.118-acre property on Horseshoe Pike in East Brandywine Township (Township) (Carlino Property). Brandywine owns land to the east and immediately adjacent to the Carlino Property, on which it has, since 1995, operated the Brandywine Village Shopping Center, which includes a small food store. L&R is an owner of an undeveloped parcel of land located adjacent to the Carlino Property.

Since 2010, Carlino has sought to develop the Carlino Property to construct a new shopping center that will include a Giant Food Store. As part of its land development plans filed with the Township, the Township required Carlino to build a road on the Carlino Property to connect two state roads, Horseshoe Pike (Route 322) and North Guthriesville Road (Route 4013), to alleviate a dangerous driving condition existing at the intersection of those two roads (Connector Road). In 2011, Carlino filed an application with District 6 of DOT for a Highway Occupancy Permit to install driveways leading onto these two state roads.

Construction of the Connector Road and related stormwater facilities required the Township to condemn (1) Brandywine's easement - to install and use as an access drive on the Carlino Property leading to the Brandywine Village Shopping Center, (2) .069-acres of frontage of the Brandywine Village Shopping Center, and (3) 1.93 acres of vacant land owned by L&R - to extend the Connector Road to North Guthriesville Road and to install a drainage basin for the Connector Road. On November 17, 2014, the Township filed its Declaration of Taking. Brandywine filed objections to the condemnation. The trial court overruled the objections in a decision affirmed by this Court in *Condemnation of Fee Simple Title to 0.069 Acres* (Pa.

Cmwlth., No. 1409 C.D. 2017, filed July 2, 2018), *appeal denied*, 202 A.3d 684 (Pa. 2018).

On March 16, 2017, Carlino resubmitted the application for the Highway Occupancy Permit. (Reproduced Record (R.R.) at 1244a.) DOT allowed Brandywine "limited intervention" in Carlino's application, which included allowing Brandywine to make comments on Carlino's submissions. On May 31, 2017, Brandywine, through its consultant, Caruolo Associates, Inc. (Caruolo), informed DOT that it had concerns with the capacity and safety of traffic operations on the new Connector Road and its intersections with Route 322 and the Brandywine Village Shopping Center. It was Brandywine's position that its existing permitted signalized Highway Occupancy Permit (obtained in 1991) is being eliminated and Brandywine will be required to use a substandard new access road proposed under Carlino's Permit. Specifically, Caruolo informed DOT that the to-be-created right turn lane proposed by Carlino was only 125 feet long and that DOT standards required the lane to be 250 feet long. *Id.* at 2332a. Additionally, Brandywine, through Caruolo, cautioned DOT that serious concerns existed over the **design** of an internal intersection created by the Connector Road. Specifically,

> [t]he plans show unsafe turning issues with trucks' turning maneuvers into and out of the Connector Road and the existing Brandywine Village Shopping Center which require delivery trucks to use adjacent thru and/or opposing thru lanes for turns. . . . Either using the existing access intersection on Route 322 or increasing the turning radii and road widening can eliminate this issue. There appears [to be] no reason the Connector Road cannot be moved to accommodate such a re-design.

*Id.* at 2333a.

Thereafter, Brandywine submitted numerous documents and comments to DOT, alleging defects in Carlino's proposed design, warning DOT that Carlino's plans

3

showed "unsafe turning issues with trucks," and recommending that the Connector Road be moved to a different location. *Id.* at 1089a, 3152a, 4096a-130a, 4099a, 4102a, 4386a-87a, 6554a-66a, 6577a-638a, 6639a-43a, 6744a-750a.

On June 25, 2020, after reviewing Carlino's permit application for three years through twelve cycles of comments, DOT issued the Permit, allowing Carlino to install the two driveways at the Connector Road's intersections with State Routes 322 and 4013.[2] On July 1, 2020, Brandywine appealed DOT's issuance of the Permit contending that the Permit must be revoked because, *inter alia*, (1) it creates unsafe turning conflicts for truck traffic because trucks coming into the Brandywine Shopping Center from the Connector Road would be unable to do so without crossing into other lanes of traffic; and (2) the Connector Road's right turn lane along Route 322 was of purportedly insufficient length (short by 50 feet).

In preparation for the hearing on the appeal, Brandywine indicated in its offers of proof that it intended to present evidence regarding the proposed design of its internal driveway movements/circulation (*i.e.*, internal flow of traffic in its shopping center), specifically that its internal driveway off of the Connector Road will purportedly not provide safe access to the State highway at the Connector Road's intersection with the Brandywine Village Shopping Center.[3] By February 8, 2021 order, the Hearing Officer held:

---

[2] Meanwhile, on June 6, 2019, the Township conditionally approved Carlino's development plan to build the new shopping center, with the Giant Food Store, and the Connector Road. The trial court and this Court upheld Carlino's development approvals over Brandywine's objections. *Brandywine Village Associates v. East Brandywine Township Board of Supervisors* (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021) *appeal denied*, 275 A.3d 957 (Pa. 2022).

[3] The internal intersection is the point at which traffic moves between Brandywine's parcel and the Connector Road. (R.R. at 6700a, 10197a-222a, 10244a-45a.) It is not where traffic enters or exits the State highway.

4

> The Township's condemnation of the current access and the Township's land development plan approval, including design of the [C]onnector [R]oad and internal traffic movements are hereby excluded from consideration and any testimony relative thereto; . . .
>
> The issue in the within appeal is whether the [P]ermit was properly issued under the regulations relating to access to highways.

*Id.* at 9753a-54a.

Hearings were held on July 27, 2021, July 28, 2021, and September 27, 2021, before the Hearing Officer. *Id.* at 9859a, 10136a, and 11466a.

### A. Expert Testimony Supporting the Permit

Carlino's traffic engineer, AnnMarie Vigilante, P.E. (Vigilante) of Langan Engineering & Environmental Services (Langan), designed the right turn lane to have a length of 242 feet. In addition, Vigilante added a 75-foot taper so that vehicles can merge into the right turn lane. *Id.* at 11524a-43a.

The Hearing Officer accepted Vigilante as an expert traffic engineer, without objection from any party. Vigilante testified that DOT regulations do not mandate a specific length for a turn lane. *Id.* at 9964a. At DOT's request, Vigilante used Synchro, an industry-accepted traffic engineering software, to identify associated storage lengths for the turn lane. *Id.* at 8904a. Because the right turn lane is free flowing, without a signal or stop sign, Synchro demonstrated that there would be no traffic waiting in line (queue), and that the proposed length for the turn lane in Vigilante's words "more than adequate." *Id.* at 3306a, 9842a, 11515a-17a.

Vigilante testified to a reasonable degree of professional certainty that the right turn lane was designed in accordance with DOT regulations and the right turn

5

lane's length was sufficient under the guidelines set forth in Publication 46.[4]  *Id.* at 11525a-26a.  She explained:

> [T]he regulation does not mandate a specific measurement for the right turn lane. Our Synchro Analysis showed a zero queue, the traffic is free flowing due to the yield condition. Myself, or my team, as well as [DOT's] District Six, we feel we properly exercised engineering judgment to conclude that the proposed 200 foot plus right turn lane was more than sufficient. The right turn lane as we stated is approximately 242 feet with a 75-foot taper. It does [not] impose any restrictions to [Brandywine's] frontage, and it doesn't affect their (sic) access to Horseshoe Pike.

*Id.* at 11526a-27a.

Without objection, the Hearing Officer accepted Francis J. Hanney (Hanney), DOT's District 6 Traffic Services Manager responsible for reviewing Carlino's application, as an expert in DOT's highway occupancy permit program, traffic design and safety.  *Id.* at 10381a, 10389a.  Hanney agreed with Vigilante's testimony that the right turn lane's length was sufficient.  *Id.* at 4888a, 9842a, 10404a.  Hanney testified regarding the right turn lane:

> It is absolutely safe. It is more than adequate. The numbers showed it only needed to be 175 [feet]. . . .There are a number of mitigating factors that went into that decision. In addition, it complies with the requirement of [Publication] 46, Chapter 11.

*Id.* at 10404a.

Upon review of the Permit plans, Hanney concluded that the plans provided Brandywine and its customers safe and efficient ingress and egress to its Shopping Center.  *Id.* at 10390a-391a.  He further concluded that Brandywine customers would have to travel less than they travel currently to access Brandywine's Shopping Center.  *Id.* at 10393a-94a.

---

[4] Publication 46 is DOT's "Traffic Engineering Manual."  *See* R.R. at 9199a, 9927a-35a.

On cross examination, Hanney testified that the Permit did not adversely affect Brandywine:

> Our conclusion was that there were – there was an existing right-in/right-out access to [the Brandywine Property]. There was, additionally, a full signalized access to [the Brandywine Property]. And post[-P]ermit issuance and post construction, those two accesses remain. So our conclusion was that there was no adverse effect upon [the Brandywine Property], at least with respect to any []DOT actions or any work or approvals within the []DOT Highway Right-of-Way.

*Id.* at 11593a.

When asked on cross examination about Brandywine's internal driveway, Hanney testified:

> You're making a reference to the internal movements that are well removed from the [S]tate highway, over which we do not have jurisdiction, unless they in some way, impacted the state highway, which in our opinion, they do not. So I have no comment on that particular portion of this project.

*Id.* at 11589a.

DOT's outside consultant, Scott Bechard (Bechard), is a senior transportation planner with Dawood Engineering who has reviewed hundreds of highways occupancy permits for DOT. *Id.* at 10144-46a. He was the lead reviewer of Carlino's Permit application. *Id.* at 10151a. The Hearing Officer accepted Bechard as an expert in the field of transportation, planning, and design review, without objection. *Id.* at 10147a, 10151a.

Bechard agreed that Langan's Synchro analysis "actually shows zero queues which isn't surprising considering this is a channelized right turn with just yield control." *Id.* at 10165a. Based upon his training and years of experience, he concluded that the proposed 200-foot plus turn lane in this location and under these circumstances was safe for the traveling public. *Id.* at 10166a.

7

Bechard did not agree with Brandywine's contention that the Connector Road should be relocated fifty feet west as set forth in its alternative plan for Carlino's development. *Id.* at 4385a. On cross-examination, he testified that the Connector Road could not be relocated fifty feet west because in accordance with Publication 46, minimum spacing between traffic signals is a quarter mile and desirable spacing is a half mile and, therefore, "moving [the Connector Road] further west would reduce that distance which is less than a quarter mile." *Id.* at 10213a. The distance between signals from the Bollinger Road intersection with Horseshoe Pike to the Connector Road's intersection with Horseshoe Pike would be approximately 1,100 feet. *Id.* at 10218a-20a. Bechard explained:

> The existing [highway occupancy permit] feeds traffic to that internal intersection, yes. But the design of that internal intersection is not specifically controlled by the intersection of [Route] 322. You know, there's – there's multiple opportunities for redesign of that intersection that could accommodate the concerns in question.

*Id.* at 10222a. Bechard further testified that Brandywine's internal driveway is "considered as part of the municipal land development process and – not something that [they] would evaluate for safe and efficient access." *Id.* at 10198a.

Brandywine presented the testimony of John Wetzel, P.E., a municipal engineer. Wetzel admitted that he does not hold himself out to be a "traffic engineer." *Id.* at 10567a. In the prior fifteen years, he had not designed a shopping center development, including a high-volume entrance to a shopping center. *Id.* at 10570a. Although the Hearing Officer questioned the weight given to Wetzel's testimony due to his lack of expertise, he allowed him to testify. *Id.* at 10578a-79a.

While Wetzel initially claimed that the Connector Road's right turn lane was required to be 250 feet in length, he later admitted that his opinion was based on an incorrect calculation. For his opinion, he had relied solely on a DOT worksheet that

8

was referenced in Chapter 11 of Publication 46. *Id.* at 9928a-33a. Notably, DOT's expert, Bechard, had testified that for an unsignalized right turn lane, the Publication 46 workbook for determining right turn length indicates that 60 cycles per hour should be used for the calculation, which results in a 175-foot calculated storage length. *Id.* at 10156a-63a. Wetzel acknowledged that unlike Bechard, he used 40 cycles per hour and that if he had used the correct 60 cycles per hour, the right turn length need only be 175 feet. *Id.* at 10036a-38a, 9927a, 10036a-38a. Wetzel did not perform any further analysis beyond the worksheet, including Synchro, which he admitted he had never used before. *Id.* at 9972a. Wetzel also did not conduct his own traffic counts, *id.* at 9953a, and he used outdated Langan traffic counts into the worksheet. *Id.* 9928a, 9933a, 9959a. Wetzel was not aware that there were later traffic counts that had been done. *Id.* at 9961a. Wetzel also acknowledged that trucks driving east from Downingtown or Exton can access Brandywine's right in/right out driveway. *Id.* at 9954a-55a. He further acknowledged that Carlino's approved Permit plans allow Brandywine's customers ingress and egress to the Brandywine Village Shopping Center and do not require Brandywine or its customers to travel a distance for access. *Id.* at 10040a-41a. Finally, Wetzel acknowledged that DOT was authorized to use its own judgment to determine whether the right turn lane was required and the necessary length. *Id.* at 9964a-65a.

## B. Hearing Officer's Proposed Report

On September 20, 2022, the Hearing Officer issued his Proposed Report denying Brandywine's appeal. The Hearing Officer first concluded that Brandywine had failed to present credible evidence to meet its burden of showing that the Permit was not issued in accordance with the regulations regarding its claim that the length of the right turn lane is deficient. (Proposed Report at 23; Finding of Fact (FOF) 114.)

Regarding the internal intersection, the Hearing Officer found that the internal intersection does not provide access to the State highway right-of-way and is under the sole jurisdiction of the Township. He noted that under Section 441.3 of DOT's regulations, the plans for internal traffic circulation are submitted in order for DOT to properly evaluate the traffic flow to and from the State highway right-of-way. He concluded, however, that although "[DOT] has the power to evaluate the flow of traffic to and from the [S]tate highway right[-]of[-]way, . . . that in no way means [DOT has] the authority to control an internal intersection." (Proposed Report at 41.) The Hearing Officer distinguished *Nardo v. Pennsylvania Department of Transportation*, 552 A.2d 718, 719 (Pa. Cmwlth. 1988), relied upon by Brandywine, as follows:

> [Brandywine] argue[s] that the facts of this appeal are analogous to the internal intersection discussed in *Nardo*, because both intersections concern "internal traffic at shopping area which eventually empties into and enters from a [S]tate highway." [It] further interpret[s] this to mean that []DOT has the power to control the Connector Road's intersection with [Brandywine's] Shopping Center. I disagree. During the [Highway Occupancy Permit] application process the details of internal traffic circulation must be considered for traffic safety control to properly evaluate the traffic flow to and from the [S]tate highway right of way. **Once [DOT] determines there is no safety issue to the motoring public where traffic exits and enters the state highway, the design of the internal intersection is beyond the scope of [DOT's] jurisdiction under the State Highway Law.**[5]

> In addition, there is a paramount difference between this case before me and the *Nardo* case. In this case, after a thorough review of the plans, **[DOT] determined that the design of the internal intersection causes no safety problem with**

---

[5] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§ 670-101-670-1102.

**the access to the State highway**. Whereas, the court in the *Nardo* case determined:

> The hearing officer found that the auxiliary cut creates confusion and improper traffic movement, affecting the safety of the motoring public. The officer found that the volume of daily traffic of a driveway dictates the design features as required by DOT. Additionally, the officer found that an internal auxiliary driveway, as proposed by the petitioners, tempts vehicles to drive in the wrong directions. The officer concluded that this affects the flow of traffic which impacts on the safety and reasonableness of the as-built driveway access, and that subsequently affects driveway access onto the [S]tate highway.

*Nardo*[, 552 A.2d] at 719.

Distinct in this case, were 12 comment cycles, as well as requiring Carlino to present a traffic study. We do not know exactly what processes, plans, or traffic studies were presented in the *Nardo* case; only the finding of the [h]earing [o]fficer that "[]the auxiliary cut creates confusion and improper traffic movement, affecting the safety of the motoring public." **In this matter both []DOT and Carlino presented credible expert witness testimony**, [and] traffic studies, as well as evidence showing [DOT] diligently went through 12 comment cycles and thereafter determined **that the internal movements along the Connector Road have no safety impact on the [S]tate highway.**

[Brandywine] further argue[s], "[DOT] exercised its jurisdiction over the internal intersection and required [Carlino] to address some concerns raised by [Brandywine]." (JS-Ex. 57, [DOT's] District Cycle 11 Comments). **However, distinguishable is the authority to "properly evaluate the traffic flow to and from the [S]tate highway right[-]of[-]way" and actual jurisdiction to control a local**

11

**township road**. While []DOT has the authority to issue or deny [a highway occupancy permit], any legal decisions and judgments over a [T]ownship road is outside the authority of []DOT. **Therefore, design of the internal intersection is beyond the scope of [DOT's] jurisdiction under the State Highway Law because the intersection itself is not an access to the [S]tate highway right[-]of[-]way and the design does not impact the [S]tate highway.**

**The internal intersection is under the jurisdiction of the Township and [Brandywine] had the opportunity to present evidence regarding any alleged design defects during the local land development proceedings**. In fact, [Brandywine] brought such claims and, after multiple rounds of appeals, the Commonwealth Court affirmed the final land development plans by Order dated July 20, 2021. *Brandywine Village Assoc., LP and L&R Partnership, LLC v. East Brandywine* [*Township* **(Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021**)].

(Proposed Report, at 41-44) (emphasis added).

On October 19, 2022, and pursuant to 1 Pa. Code § 35.211, Brandywine filed exceptions requesting that (1) DOT not accept the Hearing Officer's Proposed Report; and (2) the matter be returned to the Hearing Officer with instructions to re-open the record and allow the introduction of additional evidence. (R.R. at 11947a.) On October 6, 2023, DOT denied Brandywine's Exceptions, thereby making the Proposed Report a Final Order. *Id.* at 12053a. Brandywine now petitions this Court for review of DOT's Final Order.[6]

---

[6] This Court's standard of review in an appeal from an administrative agency's adjudication includes determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether substantial evidence supports the agency's findings. 2 Pa. C.S. § 704.

12

## II. Discussion

Brandywine, as intervener challenging the issuance of the Permit, bears the burden of proof in this proceeding. 67 Pa. Code §491.10(b)(3).[7] Furthermore, the Hearing Officer "as the fact finder determines credibility of the witnesses including experts, and the fact that he chooses to believe one over the other does not make his finding capricious or demonstrate that he deliberately ignored evidence." *Nardo*, 552 A.2d at 719.

### A.

In its first issue, Brandywine argues that the Hearing Officer erroneously refused to allow it to introduce evidence related to the allegedly unsafe proposed design of the internal intersection located in its Shopping Center. It argues in this same vein that DOT's failure to address Brandywine's internal traffic concerns was erroneous and inconsistent with the plain language of Section 441.3(i)(3) of the Pennsylvania Code, which provides:

> (i) Plans for other than minimum use driveways. The permit application for all driveways other than those classified as minimum use shall include a plan which illustrates, as a minimum, the following, including dimensions where applicable:
>
> * * * *
>
> **(3) Details of internal traffic circulation, parking, and traffic signs.**

67 Pa. Code § 441.3(i)(3).

---

[7] Section 491.10(b)(3) provides:

> In matters initiated by an intervener challenging [DOT's] actions, the intervener shall proceed first with the presentation of evidence at the hearing.

67 Pa. Code §491.10(b)(3).

Brandywine interprets this section of the regulation as requiring DOT to review the design of the internal intersection and points to *Nardo* in support of its assertion.

In *Nardo*, the petitioners sought to commercially develop a tract of land that bordered a state highway. *Nardo*, 552 A.2d at 719. DOT issued a highway occupancy permit pursuant to a plan submitted by the petitioners that included the internal traffic pattern of its development, in accordance with 67 Pa. Code § 441.3(i)(3), for the development and a driveway with curbing. *Id.* The petitioners then sought to add a McDonald's to the development and submitted a new plan for the township's approval that removed the driveway curbing in the approved the highway occupancy permit plan and added an auxiliary lane that provided access to the McDonald's. *Id.* The petitioners then submitted the new plan to DOT. *Id.* DOT did not approve the plan because the changes to internal traffic flow had safety impacts that subsequently affect the driveway's access to the State highway. *Id.* In *Nardo*, we stated that

> [t]he ingress and egress from the tract to the [S]tate highway is a traffic safety factor controlled by the Secretary of Highways. This control would be meaningless unless it was accompanied by the power to control internal traffic at a shopping area which eventually empties into and enters from a [S]tate highway. In fact, regulation 67 Pa. Code § 441.3 makes it mandatory that an applicant detail internal traffic circulation, parking and traffic signals. Such a regulation is a reasonable one designed to carry out the function of the Secretary of Highways.

*Nardo*, 552 A.2d at 719

Of note is the *Nardo* Court's reference to the internal intersection as it related to traffic that "eventually emptie[d] into and enter[ed] from a [S]tate highway" and the engineering evidence from both sides concerning the impact of the internal driveway on the safety factor "at the point where traffic exited and entered the [S]tate

14

highway." *Id.* This Court specifically noted that the hearing officer found that the new auxiliary lane created confusion and improper traffic movement and that the petitioners' plans tempted traffic to move in the wrong direction. *Id.* The hearing officer determined that those concerns were both safety issues that affected the motoring public and concluded that those safety concerns would "**impact the safety of the driveway that connects to the State highway**." *Id.* (emphasis added).

As the *Nardo* Court confirmed, DOT is authorized to deny a highway occupancy permit application if it identifies issues that would impact the safety of traffic entering and exiting the State highway. However, here, nothing in its submissions during the review process or its pretrial filings suggests that Brandywine believed that the internal intersection design would impact **the safety of the access that connects to the State highway.** Brandywine offered no evidence and made no claims that ingress and egress to the State highway was unsafe in relation to the internal intersection. In fact, the intersection of the Connector Road and Brandywine's Shopping Center is not an opening of a street or driveway onto a state highway. Rather, it is an opening from Brandywine's private property to what will become a Township road that eventually accesses the State highway.

DOT and Carlino offered credible evidence that the Highway Occupancy Permit plans would result in safe, reasonable, and effective access to the State highway and, therefore, the permit was not issued in error. Where internal traffic circulation does not impact the safe and reasonable access to the State highway, DOT has no obligation, and indeed no jurisdiction, to "control" the design of the internal traffic circulation. Therefore, we reject Brandywine's attempt to expand *Nardo's* reference to DOT's "control" over internal intersections to mean that DOT has the power **to regulate the design of internal intersections and traffic circulation** where no safety

15

impact to the State highway access has been identified. As the Hearing Officer aptly pointed out, the design of the internal intersection is a matter that should be brought before the Board of Supervisors in local land development proceedings – a process of which Brandywine availed itself. This Court has already weighed in on the design of the internal intersection when affirming the Township's 2019 approval of Carlino's land development plan and rejecting Brandywine's objections to the development plan. *See Brandywine Village Associates, LP and L&R Partnership, LLC v. East Brandywine Township Board of Supervisors* (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021), *app. den.* 275 A.3d 957 (Pa. 2022). Therefore, we find this issue to be without merit.

## B.

In its second issue, Brandywine argues that DOT committed an error of law when it "waived" design requirements relating to the length of the right turn lane in violation of Section 441.5(e) of the Pennsylvania Code, 67 Pa. Code § 441.5(e). It maintains that the length of the turn lane shown is 200 feet, however, the design requirement is 250 feet. Brandywine argues that other reasonable access did exist, and the waiver caused traffic problems.

Section 441.5 of DOT's regulations provides:

If any design requirement set forth in this chapter cannot be met, the director may waiver the requirement if the following conditions are satisfied:

(i) no other reasonable access is available;

(ii) the applicant has done all that can reasonably be done to satisfy the design requirement;

(iii) if additional land is required, the applicant provides satisfactory evidence that it cannot be purchased at a reasonable price;

16

(iv) no traffic problem will be created; and

(v) the applicant executes an indemnity agreement satisfactory to the Commonwealth.

67 Pa. Code § 441.5(e).

For a waiver to be required, there must exist a design requirement that cannot be met. Here, DOT did not waive any design requirements because there were no design requirements that could not be met. To the extent Brandywine argues that the design requirement is 250 feet, it failed to show that was the case.

First, there is no DOT regulation that requires that a right turn lane must be 250 feet in length. In fact, Brandywine's expert, Wetzel, acknowledged this was the case. (R.R. at 9964a.) Rather, DOT's regulations provide that turn lane length is dependent upon a host of factors:

> The combination of highway speed, volumes, location, and arrangement of driveways and intersections may require the installation of an acceleration or deceleration lane, or both, to serve a proposed low, medium, or high volume driveway. When required by the permit, a speed change lane of sufficient length and width shall be constructed to allow vehicles to safely decelerate or accelerate when entering or leaving the property.

67 Pa. Code. § 441.8(j)(1).

Furthermore, Publication 46, Section 11.6 provides guidance that engineering judgment may be used to design turn lanes:

> Some of the factors or combination of factors, that may need to be considered and may justify turn lanes to preserve safe and efficient traffic flow include crash history; sight distance; deceleration requirements; the type and volume of turning traffic nearby land use; grades; locations on high-speed multilane highways; 85th percentile and safe turning speeds; and engineering judgment.

17

(R.R. at 8907a.)

Here, both DOT and Carlino provided credible evidence that the design requirements set forth in 67 Pa. Code § 441.8 were met and that the proposed plans provide safe and reasonable access. *Id.* at 10168a, 10405a, 11541a. DOT's evidence demonstrated that the turn lane safety considerations were met and, in fact, exceeded. Its experts credibly testified that the 200-foot right turn lane is "absolutely safe" for the traveling public and "more than adequate" because the calculations and other mitigating factors, including queue lengths and speed limit, show that the lane only needs to be 175 feet in length. *Id.* at 10163a, 10404a. As noted, Bechard testified that for an unsignalized right turn lane, as is the case in this location, the Publication 46 workbook for determining right turn length indicates that 60 cycles per hour should be used for the calculation, which results in a 175-foot calculated storage lane. *Id.* at 10163a. In addition to the Publication 46 workbook calculations, the turn lane length was evaluated based on engineering judgment considering the existing constraints in the area, the Synchro analysis, simulation of traffic queuing, speed limit, and the characteristics of the adjacent roadway. *Id.* at 10221a, 10230a. These considerations resulted in a conclusion that the 200-foot storage lane shown on the final Highway Occupancy Permit plans is more than sufficient and safe for the traveling public. *Id.* at 10163a, 10164a, 10166a.

Brandywine relies solely on its expert's testimony to support its argument that the turn lane was required to be 250-feet in length. However, Wetzel acknowledged that DOT was authorized to use its own judgment to determine whether the right turn lane was required and the necessary length. *Id.* at 9964a-65a. He also acknowledged that the length of the right turn lane on the approved plans is longer than 200 feet if measured from the end of the 75-foot taper to the yield line shown on the

18

plan. *Id.* at 9970a-71a. Moreover, as discussed, Wetzel admitted that if he had put the correct data into the DOT worksheet that he had used for his opinion, the right turn's length would only need to be 175 feet, rather than the 250 feet he had earlier opined was required. *Id.* at 10036a-38a. Therefore, according to the testimony of its own expert witness, the right turn lane's length exceeded the 175-foot length that he ultimately testified was necessary, once he entered the correct information into the DOT worksheet. Further, the Hearing Officer found Wetzel to be not credible.

Because Brandywine did not demonstrate that any of the specific driveway design requirements enumerated in 67 Pa. Code § 441.8 were not met, the design waiver process in 67 Pa. Code § 441.5(e) was not triggered. Brandywine's argument in this regard is therefore without merit.

## C.

In its final issue, Brandywine argues that by eliminating the primary and safe access to its Shopping Center, DOT infringed upon Brandywine's substantive due process rights. It maintains it has a fundamental right to safe primary access to its shopping center and that under a strict scrutiny standard, DOT's issuance of the Permit violates its substantive due process rights.

The protections of substantive due process are meant to guard against arbitrary and irrational actions of the government. *Water Polo I, L.P. v. West Hanover Township Sewer Authority*, 301 A.3d 1009, 1023 (Pa. Cmwlth. 2023). "[F]or substantive due process rights to attach there must first be a deprivation of a property right or other interest that is constitutionally protected." *Khan v. State Board of Auctioneer Examiners*, 842 A.2d 936, 946 (Pa. 2004).

Brandywine fails to articulate any bona fide property right or other interest of which it is being deprived by DOT. It is well settled that, under its general police

19

power, the Commonwealth may restrict, or even prohibit, vehicular access to and from abutting property in order to promote and protect the public health, safety, and welfare. *Department of Transportation v. Longo*, 510 A.2d 832, 834 (Pa. Cmwlth. 1986). The right to direct access onto a public street may be severely limited or even eliminated where other available access exists, a concept that has long been recognized by this Court. *See Hardee's Food Systems, Inc. v. Department of Transportation*, 434 A.2d 1209, 1211 (Pa. 1981).

Although a landowner has a constitutional right to reasonable ingress and egress from an abutting highway to its property, a landowner does not have a constitutional right, or even a mere cognizable legal interest, in preserving a particular traffic flow or pattern. *Carlino v. Whitpain Investors*, 453 A.2d 1385 (Pa. 1982).

Here, the Permit authorizes a reconfiguration of Brandywine's access to Horseshoe Pike to accommodate Carlino's right to ingress and egress for its development. Brandywine's access is not eliminated, as acknowledged by its own expert. (R.R. at 10040a-41a.) The record is clear that the Highway Occupancy Permit plans provide access to the Brandywine Village Shopping Center from the State highway from three separate locations – the signalized intersection at Horseshoe Pike, the right-in right-out access at Horseshoe Pike, and the access from the Connector Road to North Guthriesville Road. (R.R. at 6700a, 9953a-56a, 11480a-82a.) Brandywine provides no authority for its proposition that it has a constitutional right to "primary" access, nor does it claim any deficiency with the other access points. In addition, the Township's condemnation provided for Brandywine's continued use of its current access at the signalized intersection until the Connector Road is constructed. (R.R. at 1086a, 1128a-1151a, 115992a-93a.)

Brandywine has not in any way been deprived of ingress and egress to its property. Therefore, it has not met the threshold requirement necessary to raise a substantive due process violation.

### III.    Conclusion

For the foregoing reasons, DOT's Final Order is affirmed.


_____

PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in   the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates, :
LLP, and L&R Partnership, LLC :
                                :
        Petitioners             :    No. 1214 C.D. 2023
                                :
    v.                          :    Argued: June 4, 2024
                                :
Pennsylvania Department of      :
Transportation                  :

## ***ORDER***

AND NOW, this 10th day of July, 2024, the October 6, 2023 Final Agency Order issued by the Commonwealth of Pennsylvania, Department of Transportation, is hereby AFFIRMED.


                            _____
                            PATRICIA A. McCULLOUGH, Judge